Daniel E. HEFFERNAN, Plaintiff–Appellant,

v.

PACIFIC DUNLOP GNB CORPORATION, a Delaware corporation, and GNB Incorporated, a Delaware corporation, Defendants–Appellees.

No. 91–2762.

United States Court of Appeals, Seventh Circuit.

Argued April 2, 1992.

Decided June 5, 1992.

Gerald A. Novack (argued), George W. Arnett, III, Lord, Day, Lord, Barrett & Smith, New York City, Derke J. Price, Nick J. DiGiovanni, Lord, Bissell & Brook, Chicago, Ill., for plaintiff-appellant.

Peter J. Meyer, Michael J. Koenigsknecht (argued), Daniel J. Sheridan, Gardner, Carton & Douglas, Chicago, Ill., Lewis S. Black, Jr., Morris, Nichols, Arsht & Tunnell, Wilmington, Del., for defendants-appellees.

Before FLAUM and RIPPLE, Circuit Judges, and ESCHBACH, Senior Circuit Judge.

ESCHBACH, Senior Circuit Judge.

Litigation is an occupational hazard for corporate directors, albeit one that may often be shifted to the corporation through indemnification. In this diversity case, we consider whether Delaware law precludes a former director from obtaining indemnifica-

tion from the corporations he served. For the reasons that follow, we hold that the district court prematurely dismissed this case under Rule 12(b)(6) by concluding that it was one in which the director could prove no set of facts entitling him to indemnification. Accordingly, we reverse and remand for further proceedings.

## I.

Daniel E. Heffernan is a former director and 6.7% shareholder of GNB Holdings, Inc. (Holdings) and its wholly-owned subsidiary, GNB Inc. (GNB). In October 1987, a third firm, Pacific Dunlop Holdings, Inc.[1] (Pacific) acquired control of Holdings (and in turn, GNB) pursuant to a stock purchase transaction whereby Pacific acquired approximately 60% of Holdings' stock, boosting its total ownership to 92%. Prior to Pacific's stock purchase, Holdings had filed a registration statement with the Securities and Exchange Commission (SEC) in contemplation of an initial public offering of its stock. Holdings later abandoned the public offering, opting instead to structure a private transaction with Pacific. The transaction was pursuant to an agreement (the Stock Purchase Agreement) by and among Pacific, Holdings, certain management shareholders, Heffernan and Allen & Co. (an investment company that owned approximately 20% of Holdings' stock and for which Heffernan was a vice president). Pursuant to the Stock Purchase Agreement, which apparently incorporated the material that Holdings previously had prepared for the SEC, Heffernan sold Pacific his 6.7% interest in Holdings and ceased to be a director.

Litigation subsequently arose out of the Stock Purchase Agreement. In September 1990, Pacific sued Heffernan and Allen & Co. under section 12(2) of the Securities Act of 1933, 15 U.S.C. § 77*l*(2), and under Illinois securities law. *See Pacific Dunlop Holdings, Inc. v. Allen & Co.*, No. 90–C–5678 slip op., 1991 U.S. Dist. Lexis 6748 (N.D.Ill. May 15, 1991). Pacific sought to rescind its purchase of Heffernan's and Allen & Co.'s shares in Holdings on the ground that the Stock Purchase Agreement was materially misleading in regard to its disclosure of certain liabilities facing Holdings and GNB. At oral argument, the parties indicated that Pacific has sued some of the other parties to the Stock Purchase Agreement as well, although the record leaves unclear specifically whom it sued. Heffernan requested indemnification and an advance on his litigation expenses from Holdings and GNB pursuant to section 145 of the Delaware General Corporation Law and the companies' corporate bylaws. *See* Del.Code Ann. tit. 8, § 145; R. 1–1 Exhibits A, B. When Holdings refused (and GNB failed to respond to) Heffernan's request, he initiated this action against the two companies seeking to establish his rights to indemnification and advances.

Under Delaware law, "a corporation may indemnify any person who was or is a party to any [suit] by reason of the fact that he is or was a director...." § 145(a).[2] Holdings' and GNB's bylaws make mandatory the provision for permissive indemnification in section 145(a). *See* R. 1–1 Exhibit A § 6.01; Exhibit B § 7. Holdings' bylaws state that "the Corporation shall, to the fullest extent permitted by the Delaware General Corporation law ... indemnify and hold harmless any person who is or was a party [to] any [suit] by reason of his status as, or the fact that he is or was or has agreed to become, a director [of] the Corporation or of an affiliate, and as to acts performed in the course of the [director's] duty to the Corpora-

---

**1.** Pacific Dunlop Holdings, Inc. subsequently changed its name to Pacific Dunlop GNB Corporation.

**2.** In addition, section 145(c) provides for mandatory indemnification of a director's reasonable legal expenses where the director has been successful on the merits or otherwise in defending an action under sections 145(a) (third-party actions) or 145(b) (actions by or in the name of

the corporation). *See Green v. Westcap Corp.*, 492 A.2d 260, 265 (Del.Super.Ct.1985); *see also McLean v. International Harvester Co.*, 817 F.2d 1214 (5th Cir.1987).

Advances of litigation expenses are provided for both by statute, *see* Del.Code Ann. tit. 8, § 145(e) (permissive), and Holdings' bylaws, *see* R. 1–1 Exhibit A § 6.04 (mandatory).

tion...." R. 1–1 Exhibit A § 6.01(a). GNB's bylaws simply state that "[t]he corporation shall indemnify its officers, directors, employees and agents to the extent permitted by the law of Delaware." *Id.* at Exhibit B § 7.

Heffernan does not argue that there is a material difference between the statutory requirement that a director be sued "by reason of the fact that" he was a director and Holdings' bylaw requirement that a director be sued "by reason of his status as, or the fact that" he was a director.[3] And Holdings' brief footnote argument that its bylaw standard is narrower in scope than the statutory one fails in light of its bylaws' stated objective to indemnify directors "to the fullest extent permitted" by Delaware law. Thus, we focus our inquiry on whether Pacific may have sued Heffernan "by reason of the fact that" he was a director of Holdings and GNB.

## II.

The district court dismissed Heffernan's complaint, holding that he was not entitled to indemnification under the terms of the statute and bylaws because he had been sued for "wrongs he committed as an individual, not as a director." *Heffernan v. Pacific Dunlop GNB Corp.,* 767 F.Supp. 913, 916 (N.D.Ill.1991). Furthermore, the district court reasoned that because "Heffernan's status as a director is not a necessary element of the section 12(2) claim" he was not sued by reason of the fact that he was a director. *Id.* On appeal, Heffernan argues that although he was sued over a transaction in which he sold his own stock in Holdings, it does not necessarily follow as a matter of law that he was not sued "by reason of the fact that" he was a director of Holdings and GNB. He asserts that Delaware's "by reason of the fact that" phrase reaches Pacific's suit against him because the suit involves his status as a director. Conversely, appellees Holdings and GNB contend that Pacific's complaint against Heffernan has nothing whatsoever

to do with Heffernan's former status as a director for Holdings and GNB. They argue that Delaware's "by reason of the fact that" requirement means that a director must be sued for a breach of duty to the corporation or for a wrong committed on behalf of the corporation to be entitled to indemnification. Accordingly, Holdings and GNB assert that Heffernan is not entitled to indemnification because the "sale of his stock was a personal transaction which did not involve his duties or status as a director." Brief of Appellees at 3.

■ Despite a surprising dearth of case law addressing the reach of Delaware's "by reason of the fact that" language, our review of the substance of Pacific's complaint against Heffernan in light of the language and purpose of Delaware' indemnification law convinces us that the district court's view of Pacific's complaint and Delaware's indemnification law is too restrictive. Standing alone, neither the fact that Heffernan sold his own shares in Holdings during the transaction nor the particular statutory provision on which Pacific's suit is based thwarts Heffernan's right to indemnification as a matter of law. Rather, the substance of Pacific's allegations and the nature and context of the transaction giving rise to the complaint indicate that Heffernan may have been sued, at least in part, because he was a director of Holdings and GNB. Furthermore, we find no support in the language and purpose of Delaware's indemnification statute for the defendants' argument that it limits indemnification to suits asserted against a director for breaching a duty of his directorship or for acting wrongfully on behalf of the corporation he serves. Thus, we conclude that Heffernan's complaint was improperly dismissed; it does not appear beyond doubt that Heffernan can prove no set of facts in support of his claim that would entitle him to the advances or indemnification he requests. *See Illinois Health Care Ass'n. v. Illinois Dept. of Public Health,* 879 F.2d 286, 288 (7th Cir.1989), citing *Conley v.*

---

**3.** This is not to imply, however, that there may not be other provisions of Holdings' bylaws that

diverge from the Delaware statute.

*Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957).

## III.

▉ To determine whether Heffernan was sued "by reason of the fact" that he was a director of Holdings and GNB, we begin by reviewing the allegations in the underlying action's complaint. *Mooney v. Willys–Overland Motors, Inc.,* 204 F.2d 888, 896 (3d Cir.1953). Here, the underlying complaint is based on Heffernan's sale of his shares in Holdings to Pacific pursuant to the Stock Purchase Agreement. More specifically, Pacific contends that Heffernan violated section 12(2) of the Securities Act by selling those securities pursuant to a misleading prospectus—that is, the Stock Purchase Agreement.[4] Under section 12(2), a person who offers or sells a security through a prospectus or oral communication containing a material misrepresentation or omission may be liable to the purchaser.[5] *See Ballay v. Legg Mason Wood Walker, Inc.,* 925 F.2d 682, 687–88 (3d Cir.1991), *cert. denied,* — U.S. —, 112 S.Ct. 79, 116 L.Ed.2d 52 (1991); *see also Sanders v. John Nuveen & Co.,* 619 F.2d 1222 (7th Cir.1980), *cert. denied,* 450 U.S. 1005, 101 S.Ct. 1719, 68 L.Ed.2d 210 (1981). To avoid liability, the seller must prove that he did not know, and in the exercise of reasonable care could not have known, of the misrepresentation or omission. *Id.*

▉ In complaining of Heffernan's alleged failure to disclose environmental and other liabilities of Holdings and GNB in the Stock Purchase Agreement, Pacific's complaint repeatedly states that Heffernan's status as a director put him in a position where, in the performance of his duties as a director, he either learned or should have learned of those liabilities. *See* R. 1–1, Exhibit C ¶¶ 5, 16, 19, 21. Because Pacific realleges these provisions under both counts of its complaint, *see id.* ¶¶ 42, 47, its argument that Heffernan's status as a director was not specifically alleged in the complaint is without merit. Moreover, assuming for the moment that Pacific's section 12(2) claim against Heffernan is viable, his status as a director is directly relevant to his defense. As noted earlier, to avoid liability under section 12(2), a defendant must prove that he did not know, and in the exercise of reasonable care could not have known, of the misrepresentation or omission. The defendant's position gives content to the term "reasonable care." For instance, reasonable care for a director requires more than does reasonable care for an individual owning a few shares of stock with no other connection to the corporation. *See Sanders,* 619 F.2d at 1228 n. 12; J. William Hicks, *Civil Liabilities: Enforcement and Litigation Under the 1933 Act* § 6.12[2][a][ii], at 6–297 n. 2 (1991). It is accordingly no answer to our inquiry as to whether Heffernan was sued "by reason of the fact that" he was a director to label his participation in Pacific's acquisition of Holdings a "personal" transaction. Despite the fact that Heffernan sold his own shares to Pacific, a nexus exists between Heffernan's status as a director and Pacific's suit.

Moreover, the transaction at the heart of Pacific's complaint is not a purely personal transaction of Heffernan's. Despite Holdings' and GNB's arguments to the con-

---

**4.** A "prospectus" is defined broadly in section 2(10) of the Securities Act of 1933. In short, the term refers to any notice, circular, advertisement, letter or communication, written or by radio or television, which offers any security for sale or confirms the sale of any security. *See* 15 U.S.C. § 77b(10).

**5.** Some lower federal courts have limited section 12(2)'s reach to primary offerings, finding it inapplicable to secondary market transactions. *See* J. William Hicks, *Civil Liabilities: Enforcement and Litigation Under the 1933 Act*

§ 6.01 at 6–13 n. 8 (1991). *Ballay v. Legg Mason Wood Walker, Inc.,* 925 F.2d 682 (3d Cir.1991), *cert. denied,* — U.S. —, 112 S.Ct. 79, 116 L.Ed.2d 52 (1991), is the first federal court of appeals to reach this result. *See id.* at 687–693. Although we do not reach this issue here, we note that Pacific's complaint against Heffernan was dismissed for this reason. *Pacific Dunlop Holdings, Inc. v. Allen & Co.,* slip op. No. 90–C–5678, 1991 WL 348493, 1991 U.S. Dist. Lexis 6748 (E.D.Ill. May 15, 1991). For a thorough collection of cases addressing this issue and a critique of those courts restricting the applica-

trary, Heffernan was not "trading securities for his own account" in the usual meaning of that phrase. That is, this is not a situation in which Heffernan maintained a personal trading portfolio and encountered litigation over his individual sale of a security in an unrelated company. In such a scenario, "there is no reason why the corporation should be obligated or permitted to bear the executives' [litigation] expenses." Joseph W. Bishop, Jr., *The Law of Corporate Officers and Directors: Indemnification and Insurance* § 2.03 at 4 (1988). Rather, this was a structured sale of control transaction pursuant to one agreement—all of the stock that Pacific acquired in this transaction was pursuant to the Stock Purchase Agreement.[6] We decline to distort the context in which Pacific's complaint arose by accepting Holdings' and GNB's unsupported invitation to carve Pacific's acquisition of Holdings' into various component parts.

Furthermore, neither the specific statutory provision under which a director is sued nor the mere form of the underlying complaint is dispositive of his right to indemnification. The logical extension of the district court's reliance on the "necessary elements" of section 12(2) in denying Heffernan indemnification as a matter of law is that Delaware did not intend for any suit under section 12(2) to fall within its indemnification provisions. Delaware's case-by-case approach to indemnification counsels against such a formalistic gloss. *See, e.g., MCI Telecommunications Corp. v. Wanzer,* 1990 WL 91100, 1990 Del.Super. Lexis 222; *Green v. Westcap Corp.,* 492 A.2d 260 (Del.Super.Ct.1985); *Essential Enterprises Corp. v. Automatic Steel Products, Inc.,* 164 A.2d 437 (Del.Ch.1960). Otherwise, a director could be forced to bear the costs of unfounded, harassing litigation just because the particular cause of action does not specify a breach of a duty to the corporation, regardless of the connection between the suit and the individual's service as a director.[7] As a practical matter, it is unsurprising that Pacific's complaint is not more explicit in its reliance on Heffernan's role as a director of Holdings and GNB. Because Pacific now controls Holdings and GNB, those three corporations' interests are aligned; thus Pacific has the incentive and opportunity to structure its complaint so as to avoid triggering its subsidiaries' duty of indemnification.[8] Nevertheless, artful drafting cannot disguise the fact that the gravamen of Pacific's complaint is that Heffernan, at least in part because he

---

tion of section 12(2) to primary offerings, *see* Hicks, *supra,* at § 6.01.

**6.** Because Pacific's suit arises from Heffernan's participation with Holdings in a structured sale of control transaction, we find the district court's exclusive reliance on *Spring v. Moncrieff,* 10 Misc.2d 731, 173 N.Y.S.2d 86 (N.Y.Sup.Ct. 1958) unpersuasive. Unlike Heffernan, Moncrieff subverted his company's planned sale by selling his stock to a third party rather than the would-be acquirer. Thus, Moncrieff was acting in opposition to his company, unlike Heffernan who was acting in concert with Holdings. When Moncrieff was later sued by a broker for commissions the broker lost when Moncrieff wrecked his company's deal, the court had little trouble finding that an individual who had caused litigation by acting in his own interest rather than in the corporation's should not be entitled to indemnification from that corporation.

Additionally, *Moncrieff* interprets New York's indemnification statute rather than Delaware's. Although the two were similar at the time *Moncrieff* was decided, Delaware's statute has since been broadened significantly. *See* Sebring, *Recent Legislative Changes in the Law of Indemnification of Directors, Officers and Others,* 23 Bus.Law. 95 (1967).

**7.** One commentator has noted that the language of the Delaware statute is

> intended to cover the cost of at least the successful defense of suits based on executives' trading in the corporation's securities for their own account, particularly suits under Sections 10(b) and 16(b) of the Securities Exchange Act of 1934. [T]he policies behind the securities laws do not preclude indemnification of legal expenses incurred in the successful defense of security laws claims.

Joseph W. Bishop, Jr., *The Law of Corporate Officers and Directors: Indemnification and Insurance* § 2.03 at 5–6 (citations omitted).

**8.** Put differently, in seeking funds from Pacific's subsidiaries, Heffernan is effectively assailing Pacific's coffers. Moreover, the same law firm that is defending Holdings and GNB in this action drafted Pacific's complaint against Heffernan. In arguing that Heffernan is not entitled to indemnification for his costs in defending Pacific's suit, Holdings and GNB make much of the fact that Pacific sued Heffernan under section 12(2) rather for "insider trading" (presumably under section 10(b) and Rule 10b–5 of the Securities Act of 1934). We note, however, that when Pacific sued other parties to the same transaction (the principal operating personnel of GNB), for the same disclosure problems, it employed section 10(b) and Rule 10(b)5

was a director of Holdings and GNB, either knew or should have known that Holdings and GNB may be subject to environmental and other liabilities inadequately reflected in the Stock Purchase Agreement. We recognize that because Heffernan wore three hats—director, shareholder and investment banker—his director status may not be the *only* reason that he was sued by Pacific. But at this stage of this litigation, we cannot, as a matter of law, rule out the fact that it may have been *one* reason.

## IV.

■ Having established that Pacific's complaint is connected to Heffernan's status as a director, we now turn to whether Delaware's "by reason of" requirement necessarily requires more than the nexus present here. Without delineating the precise contours of the "by reason of" phrase, we conclude that it may be broad enough to encompass the litigation that Heffernan has incurred, at least in part, because of his status as a director of Holdings and GNB. Both the language and the purpose of Delaware's indemnification statute support interpreting its scope expansively.

First, Delaware is no neophyte in corporate law matters. Had it desired to limit permissible indemnification solely to those suits in which a director is sued for breaching a duty of his directorship or for certain enumerated causes of action, it would have jettisoned the supple "by reason of the fact that" phrase in favor of more specific language. Had Delaware desired to so limit its indemnification statute, we are confident that it could have found the words. Holdings and GNB have given us no reason to doubt that Delaware's choice of language was anything but purposeful and strategic. We believe that Delaware's "by reason of the fact that" phrase is broad enough to encompass suits against a director in his official capacity as well as suits against a director that arise more tangentially from his role, position or status as a director. Flexibility of language is vexing as well as liberating. In employing

its "by reason of" phrase, Delaware is able to cover a myriad of potential factual scenarios that cannot be anticipated *ex ante* by the legislature or by corporate officials in drafting their articles and bylaws. The task of giving content to that flexible phrase, however, falls on the courts when the parties encounter interpretive differences.

Finally, we think that the policy of Delaware's indemnification statute supports permitting Heffernan to proceed to establish his right to advances and indemnification from Holdings and GNB. One of the primary purposes of Delaware's indemnification statute is to encourage capable individuals "to serve as corporate directors, secure in the knowledge that expenses incurred by them in upholding their honesty and integrity as directors will be borne by the corporation they serve." *MCI Telecommunications Corp. v. Wanzer,* 1990 Del.Super. Lexis 222 (citations omitted). Additionally, the statute ought to promote the "desirable end that corporate officials will resist what they consider unjustified suits and claims, secure in the knowledge that their reasonable expenses will be borne by the corporation they have served if they are vindicated." *Id.* Delaware has effectuated these policies by gradually expanding its indemnification provisions to cover the everchanging contexts in which a director may encounter litigation. *See Hibbert v. Hollywood Park, Inc.,* 457 A.2d 339 (Del.1983) (indemnification provided to directors acting as plaintiffs). *See generally* Veasey, Finkelstein & Bigler, *Delaware Supports Directors with a Three–Legged Stool of Limited Liability, Indemnification and Insurance,* 42 Bus.Law. 401 (1987). The district court's restrictive interpretation of Heffernan's claim diminishes the broad and expansive flavor of Delaware's indemnification provisions.

## V.

In sum, while a fine line often separates those suits emanating purely from a director's personal transactions and those suits emanating from a director's duties, role or status, we think the district court erred in prematurely concluding that Pacif-

rather than section 12(2). *See Pacific Dunlop Holdings, Inc. v. Barosh,* No. 91–C–0002 slip op.,

1991 WL 348494, 1991 U.S. Dist. Lexis 6662 (N.D.Ill. May 15, 1991).

ic's suit against Heffernan fell squarely on the personal side. We emphasize that our inquiry in this case has been a narrow one, confined to whether Heffernan's indemnification and advances claim against Holdings and GNB should be allowed to proceed. We express no opinion on the merits of Heffernan's right to advances, *see Citadel Holding Corp. v. Roven,* 603 A.2d 818 (Del. Supr.1992), or on his ultimate right to indemnification. We hold only that his suit was prematurely dismissed under an unduly restrictive reading of Delaware's indemnification law. Holdings' bylaws have numerous prerequisites that a director must meet before being entitled to indemnification. Those remain to be explored in the district court. In addition, on remand the district court should first consider Heffernan's right to advances, which the Delaware Supreme Court has recently indicated may present a prior and distinct inquiry from a director's ultimate right to indemnification. *Citadel Holding Corp.,* 603 A.2d 818; *see also id.* (resolving entitlement to interest in indemnification claims).

REVERSED AND REMANDED.

RIPPLE, Circuit Judge, concurring.

I join the judgment and the opinion of the court. Given the dearth of information available to him, my brother has done an admirable job of feeling his way to a reasoned solution of the issue before us. It must be admitted, however, that our decision involves a significant element of uncertainty [1]—uncertainty produced by the lack of sufficient Delaware authority and by the refusal of that state to permit this court to seek guidance on the issue from the Supreme Court of Delaware. *See FDIC v. Blue Rock Shopping Ctr., Inc.,* 599 F.Supp. 684, 687 (D.Del.1984); *see also* Del. Const. art. IV, § 11(9); Del.Sup.Ct.R. 41.

The inability—or rather the lack of capacity—of the federal courts to obtain reasonably clear guidance on state law matters is having a disastrous impact on the judicial governance of this country. Count-

less hours are spent by conscientious federal judges attempting to ascertain the content of state law as required by *Erie R.R. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). Sophisticated business litigation is subject to an element of uncertainty that only results in greater legal fees for the attorneys involved and greater financial burdens to the parties.

If it is the will of the Congress that we decide, under our diversity jurisdiction, matters of corporate governance regulated by a state five hundred miles away, perhaps it is time that thought be given to the development of more effective devices for obtaining an accurate reading of the content of that state's law. While perhaps there is federal power to effect such a change, our tradition of federal-state judicial cooperation would seem the most appropriate avenue to resolve the current situation.

---

1. For this reason, I hardly find fault with the valiant effort of our colleague in the district court who reached, after the same struggle, the opposite conclusion.