**Sandra BARRY, an individual, a/k/a Sandra Barry Lieberman, Plaintiff,**

v.

**Charles L. BARRY, Melanie G. Barry, Lawrence Swartz, Marcia Barry Swartz, and Twin City Fan and Blower Company, a Minnesota corporation, Defendants.**

Civ. No. 4–92–808.

United States District Court, D. Minnesota, Fourth Division.

June 15, 1993.

---

Jeff I. Ross, Lawrence T. Hofmann, Rolf E. Gilbertson, Zelle & Larson, Minneapolis, MN, for plaintiff.

David Y. Trevor, Roger J. Magnuson, John B. Orenstein, Tamara J. Byram, Dorsey & Whitney, Minneapolis, MN, for defendants Charles L. Barry, Melanie G. Barry and Twin City Fan and Blower Co.

William Z. Pentelovitch, Alain M. Baudry, Maslon, Edelman, Borman & Brand, Minneapolis, MN, for defendants Lawrence Swartz and Marcia Barry Swartz.

## MEMORANDUM AND ORDER

MacLAUGHLIN, District Judge.

This matter is before the Court on defendants Lawrence and Marcia Swartz's motion for advance of legal expenses. The motion will be granted.

### FACTS

This action arises out of a stock redemption agreement by which plaintiff sold her interest in a family-owned, closely-held corporation to defendants. Benjamin Barry, the father of plaintiff and of defendants Charles Barry and Marcia Barry Swartz, founded Twin City Fan & Blower Co. (TCF) in 1973. Ownership of the company was eventually transferred by gift in equal thirds to defendants Charles Barry and his wife Melanie Barry, defendants Marcia Barry Swartz and her husband Lawrence Swartz, and plaintiff. In 1983, plaintiff sold her shares back to TCF under the stock redemption agreement.

In 1988, defendants initiated a series of transactions that altered TCF's corporate structure; in 1990, the Swartzes and the Barrys became involved in protracted shareholder litigation arising out of the 1988 restructuring. The litigation was settled in April 1991. In connection with the settlement, the Swartzes, the Barrys, and TCF executed a mutual release by which they released all claims against each other based on anything occurring prior to the date of the mutual release, except claims relating to a purchase and loan agreement that was executed concurrently with the release. Under the purchase and loan agreement, the Swartzes sold their interest in TCF to the Barrys for approximately $15 million. The parties addressed indemnification in section 6.2 of the purchase and loan agreement, which provided:

> Mr. Barry ... and the company, jointly and severally, shall indemnify and hold [the Swartzes] harmless in respect of the aggregate of all indemnifiable damages of [the Swartzes]. For this purpose, "indemnifiable damages" ... means the aggregate of all expenses, losses, costs, deficiencies, liabilities and damages (including rea-

sonable counsel fees and expenses incurred incident to the foregoing or in enforcing this provision) incurred or suffered by either one or both of [the Swartzes] as a result of ... (iv) to the extent provided in Minnesota Statutes Section 302A.521, the fact that one or both of [the Swartzes] were directors, officers, employees or agents of the Company or any corporate affiliate thereof or predecessor thereto. . . .

Affidavit of Lawrence Swartz Ex. 1 § 6.2.

Immediately prior to executing the purchase and loan agreement, the parties effected a merger of various TCF affiliate corporations. *See id.* ¶ 1. There was apparently some concern that plaintiff would object to the merger; therefore, section 3.5 of the purchase and loan agreement provided that Lawrence Barry and the company would indemnify the Swartzes against claims arising out of the stock redemption agreement by reason of the merger. With respect to such claims, section 3.5 provided that "Mr. Barry shall bear the cost of defending [the Swartzes] if Mr. Barry and [the Swartzes] are both sued by [plaintiff] and if [the Swartzes] choose to be represented and are represented by one law firm that is selected by Mr. Barry to represent Mr. Barry's interests as well, and does represent Mr. Barry's interests." *Id.* § 3.5.

After the Swartzes sold their interest in TCF to the Barrys, plaintiff initiated this action, alleging among other things that defendants had fraudulently induced her to enter into the stock redemption agreement and had breached that agreement.[1] Through counsel, the Barrys suggested that they, the Swartzes, and TCF be represented by the same law firm and that the legal fees be allocated at the conclusion of the litigation pursuant to section 3.5 of the purchase and loan agreement. Affidavit of Morris Sherman ¶ 5. However, the Barrys and the Swartzes could not agree on joint counsel, and therefore retained separate counsel. *Id.* ¶ 6–7.

On September 25, 1992, shortly after plaintiff commenced this action, the Swartzes re-

---

1. By order dated March 3, 1993, the Court granted summary judgment for defendants on all of plaintiff's claims except the breach of contract claim.

quested an advance of legal expenses from TCF. Swartz Aff. Ex. 2. In their request, the Swartzes stated that they believed in good faith that they had met the criteria for indemnification under Minnesota's indemnification statute. In accordance with the statute, they also undertook to repay amounts advanced if it were ultimately determined that they had not satisfied the criteria for indemnification. In response to the request, TCF formed a special committee of the board of directors, which in turn retained independent counsel.[2]

By letter dated December 23, 1992, TCF denied the Swartzes' request. The committee took the position that the Swartzes had waived any statutory right to advances in favor of a contractual indemnification scheme. The committee believed that the contract did not provide for advances; the committee further stated that some of plaintiff's claims were not related to the Swartzes' former officer or director status, and therefore would not be indemnifiable in any event. The Swartzes now move for an order requiring Charles Barry and TCF[3] to advance them funds to pay reasonable legal expenses incurred in defending against plaintiff's claim.

### DISCUSSION

The Swartzes base their motion for advances upon section 6.2 of the purchase and loan agreement. They point out that section 6.2 requires TCF and Charles Barry to indemnify them "to the extent provided in Minnesota Statutes § 302A.521." Swartz Aff. Ex. 1 § 6.2(iv). They argue that this language in effect incorporates the statute into the purchase and loan agreement. Under section 302A.521, a corporation must indemnify present or former directors or officers who are made parties to a proceeding "by reason of [their] former or present official capacity" if (1) they have not been indemnified by another organization, (2) they acted in good faith, (3) they received no improper personal benefit from the conduct at issue, (4) they had no reasonable cause to believe that the conduct was unlawful, and (5) they reasonably believed that the conduct was in the best interest of the corporation. Minn.Stat. § 302A.521, subd. 2.

Section 302A.521 also provides that a corporation must advance litigation expenses prior to the final disposition of an action

> (a) upon receipt by the corporation of a written affirmation by the person [seeking advances] of a good faith belief that the criteria for indemnification . . . have been satisfied and a written undertaking by the person to repay all amounts so paid or reimbursed by the corporation, if it is ultimately determined that the criteria for indemnification have not been satisfied, and (b) after a determination that the facts then known to those making the determination would not preclude indemnification. . . .

Minn.Stat. § 302A.521, subd. 3.[4] The Swartzes assert that because section 6.2 of the purchase and loan agreement gives them all the rights conferred by Minn.Stat. § 302A.521, and because they have fulfilled all the statutory requirements for an advance of expenses, the Barry defendants must provide them the advances they seek.

In response, the Barry defendants point out that under the terms of the mutual release, the Swartzes have released all claims against them except those arising from the purchase and loan agreement. The Barry defendants then assert that the right of indemnification is distinct from the right to receive advances. Section 6.2 of the purchase and loan agreement states that the Barry defendants will "indemnify" the Swartzes to the extent provided by section 302A.521; it does not state that the Barry defendants will indemnify and provide advances to the extent provided by the statute. Therefore, the Barry defendants assert that

---

2. The committee did not include the Barrys.

3. Charles Barry, Melanie Barry, and TCF will be referred to collectively as the Barry defendants.

4. The statute further provides that if the corporation fails to make a determination regarding entitlement to advances or makes an adverse determination, the person seeking advances may seek a determination from the court in which the underlying action is proceeding. Minn.Stat. § 302A.521, subd. 6(a)(5). The Swartzes' motion for advances is based upon this provision.

the Swartzes have no right to advances under the agreement.

The Barry defendants also point out that in addition to the broad indemnification provision of section 6.2, the purchase and loan agreement contained a more specific provision that explicitly addressed the threat of litigation by plaintiff. They argue that section 3.5 of the agreement would have allowed the Swartzes to obtain a free defense to an action brought by plaintiff challenging the 1991 merger simply by agreeing to be represented by the same counsel that represented Mr. Barry. This specific provision should, in the Barry defendants' view, control over the more general indemnification provision of section 6.2.

■■ The Barry defendants are correct in their assertion that specific contractual provisions typically control over more general ones. *See, e.g., Burgi v. Eckes*, 354 N.W.2d 514, 519 (Minn.Ct.App.1984). But section 3.5 by its terms applies only to actions brought by plaintiff that challenge the 1991 merger. Although plaintiff did allege that defendants had breached the stock redemption agreement by failing to pay her additional compensation arising out of the 1991 merger, she has apparently abandoned that claim, arguing instead that defendants owe her additional compensation because of the 1988 corporate restructuring. Moreover, the Swartzes concede that they did not incur any fees or expenses in connection with plaintiff's challenge to the 1991 merger, and seek no advances for that claim. Because the Swartzes seek advances only for claims that are beyond the scope of section 3.5, the Court concludes that their entitlement to advances must be determined under section 6.2 of the purchase and loan agreement.

Both parties base their section 6.2 arguments on cases interpreting the interaction between corporate bylaws and Delaware's indemnification statute. In arguing that they are entitled to advances, the Swartzes rely upon *Heffernan v. Pacific Dunlop GNB Corp.*, 965 F.2d 369 (7th Cir.1992). In *Heffernan*, the district court dismissed a corporate director's claim for indemnification, reasoning he had been sued for wrongs that he committed as an individual, not as a director.

The Seventh Circuit reversed, holding that the district court had prematurely dismissed the claim. In reaching this result, the court noted that under Delaware law, indemnification was permissive; that is, the statute allowed a corporation to indemnify persons made parties to lawsuits because of their status as directors or former directors of the corporation. The corporate bylaws at issue in *Heffernan*, however, stated that the corporation was required to indemnify directors "to the fullest extent permitted" by Delaware law. *Heffernan*, 965 F.2d at 371. The court stated that this language in the bylaws made mandatory the statutory provision for permissive indemnification. *Id.* at 371. Because the allegations in the action that had been brought against the director suggested that he had been sued, at least in part, because of his status as a director, the court held that the director should be permitted "to proceed to establish his right to advances and indemnification." *Id.* at 375. The Swartzes point out that the language in the purchase and loan agreement, like the language in the *Heffernan* bylaws, requires indemnification "to the extent provided" by statute. Thus, they argue that here, as in *Heffernan*, the language imports into the agreement all of the provisions of the statute, including the right to advances.

As the Barry defendants point out, however, *Heffernan* was decided on a motion to dismiss. The court emphasized that its holding only allowed the director's claim to proceed; the court expressly refused to take a position on the merits of the director's claim for indemnification and advances. *Id.* at 376. On remand, the district court concluded that the director had no right to receive advances. In reaching this result, the court relied on *Advanced Mining Systems, Inc. v. Fricke*, 623 A.2d 82 (Del.Ch. Aug. 4, 1992), in which a Delaware state court held that indemnification rights and advancement rights were two distinct types of legal rights, and that a bylaw provision requiring a corporation to indemnify to the extent permitted by Delaware's permissive indemnification statute did not divest a corporation of its statutory right to refuse to provide advances. *Heffernan v. Pacific Dunlop GNB Corp.*, 1992 WL 275573,

1992 US Dist. LEXIS 14809 (E.D.Ill. Sept. 29, 1992) (*Heffernan II* ). The Barry defendants assert that this Court should follow *Heffernan II* and *Fricke* to hold that indemnification is different from advances and that an agreement to provide the former does not obligate a corporation to provide the latter.

However, the Barry defendants' argument ignores a critical distinction between Delaware law and Minnesota law. Under Delaware law, both indemnification and advances are permissive; that is, Delaware's indemnification statute allows corporations to choose whether to indemnify or advance litigation expenses. Del.Code.Ann.Tit. 8, § 145. Corporations desiring to mandate indemnification or advances may do so in their bylaws. *See Fricke*, 623 A.2d at 84–85. Both *Fricke* and *Heffernan II* hold that because indemnification and advances are distinct legal rights, and because the Delaware statute confers upon corporations the right to decide whether to indemnify and provide advances, a bylaw mandating indemnification will not be read to require a corporation to provide advances. In other words, *Fricke* and *Heffernan II* hold that if a corporation wishes to alter the statutory presumption of permissive indemnification and advances it must do so with precision.

■ Under Minnesota law, the statutory presumption is not one of permissive indemnification, but one of mandatory indemnification. Section 302A.521 provides that if the statutory requirements for indemnification or advances are met, a corporation must indemnify or provide advances. Minn.Stat. § 302A.521, subd. 2, 3. The Minnesota statute, like the Delaware statute, allows corporations to alter the statutory presumption; corporations may adopt articles or bylaws that prohibit indemnification or advances or that impose conditions on indemnification or advances beyond those imposed by statute. Minn.Stat. § 302A.521, subd. 4.

Applying the *Fricke* and *Heffernan II* reasoning to Minnesota's statutory indemnification scheme yields a result opposite from the one the Barry defendants seek. Under Minnesota's scheme, unless TCF had explicitly opted out of the statutory scheme, it would be required to indemnify and provide advances to the Swartzes in any action brought against them because of their status as former TCF officers or directors. Under *Fricke* and *Heffernan II*, any language by which TCF sought to opt out of the statutory scheme would have to be precise.

■ The parties agree that the analysis to be applied to the language in the purchase and loan agreement is the same as the analysis that would be applied to corporate bylaws. By stating in section 6.2 that TCF and Mr. Barry would indemnify the Swartzes to the extent provided by Minnesota statute, the parties did not in any way express an intent to opt out of Minnesota's scheme of mandatory indemnification and advances. Rather, they specifically affirmed the application of the statute and extended the statutory obligation to include not only the corporation, but Mr. Barry individually as well. Because the parties did not specifically express an intent to opt out of either the statutory indemnification requirement or the statutory advancement requirement, the Court holds that the Swartzes are entitled to advances to the extent that advances would be available under section 302A.521.

As noted above, section 302A.521, subd. 3 provides that unless a corporation determines that the facts then known would preclude indemnification under the statute, it must advance reasonable litigation expenses to former officers or directors who provide (1) a written affirmation of their good faith belief that the indemnification criteria have been satisfied and (2) a written undertaking to repay amounts advanced if it is ultimately determined that the criteria have not been satisfied. The Swartzes assert that they complied with the statutory prerequisites to obtaining advances, and that the company has made no determination that the facts known to it would preclude indemnification. Therefore, they assert that advances of reasonable costs and attorneys' fees are required under the statute.

■ In making this argument, the Swartzes acknowledge that the company denied their request for advances on the ground that some of the claims asserted were not related to the Swartzes' former officer or

director status and were therefore not indemnifiable. They assert, however, that because the company did not specify which claims it believed were indemnifiable and which were not, it did not make a determination that the facts known to it precluded indemnification. Because the company failed to make the determination required by the statute, the Swartzes argue that it may not deny them advances. Under the statute, however, a company's failure to make a determination regarding eligibility for advances does not necessarily entitle former officers and directors to advances; rather, it entitles them to seek a judicial determination under section 302A.521, subd. 6(a)(5). Therefore, even if the company did not make the factual determination contemplated by the statute, that fact alone would not entitle the Swartzes to advances.

■■ The Swartzes next argue that the company was wrong in determining that some of the claims asserted against them were not related to their former officer or director status. They point out that plaintiff alleges that defendants provided her with false financial information in a July 1983 letter; because that letter was signed by Lawrence Swartz as treasurer of TCF, the Swartzes assert that all claims relating to the 1983 stock redemption agreement are based upon conduct taken in Lawrence Swartz's official capacity. The Swartzes argue that plaintiff's claims relating to 1988 and 1991 corporate transactions are also based on actions they took in their official capacity: many of the documents in the 1988 and 1991 transactions were executed by Lawrence Swartz as a corporate officer, and all of the directors of TCF Industries, Inc., including both Lawrence Swartz and Marcia Barry Swartz, ratified the 1988 transaction that plaintiff alleges triggered her right to additional compensation under the stock redemption agreement. Finally, the Swartzes note that Count 4 of the complaint explicitly alleges that Lawrence Swartz acted fraudulently and illegally in his capacity as a TCF officer or director. In short, the Swartzes argue that because plaintiff's claims are based on their conduct as corporate officers or directors, the claims are indemnifiable, and the company wrongfully denied the request for advances.

In response, the Barry defendants assert that the Swartzes have misconstrued the legal standard for indemnification. In the Barry defendants' view, the mere fact that the Swartzes were factually involved as officers or directors in events giving rise to plaintiff's action does not entitle them to indemnification. Rather, the Barry defendants contend that under section 302A.521, officers or directors are entitled to indemnification only if they were sued because of their former or present official status. In this case, the Barrys argue, the Swartzes were sued not because of their official status, but because of their shareholder status. The Barry defendants concede that Count 4 of the complaint is directed against Lawrence Swartz in his official capacity; however, they point out that the Court dismissed that claim in its May 3, 1993 order. Moreover, they argue that, taken as a whole, the complaint attacks the actions of the Swartzes as majority shareholders and as parties to the 1983 stock redemption agreement. Finally, the Barry defendants note that the sole remaining claim in this case is plaintiff's claim that the defendants have breached the 1983 stock redemption agreement; that claim imposes liability upon the defendants in their capacity as shareholders. Therefore, they maintain that the Swartzes have no right to indemnification and no basis to claim advances during the remainder of the litigation.

In the Court's view, the Barry defendants' interpretation of section 302A.521 is excessively narrow. By its terms, Minnesota's indemnification statute requires corporations to indemnify those persons who have been "made a party to a proceeding by reason of [their] former or present official capacity." Minn.Stat. § 302A.521, subd. 2(a). This language is broad enough to encompass not only suits directly alleging that corporate officers or directors have breached their official duties, but also suits that arise more tangentially from their role, position, or status as officers or directors. *Heffernan v. Pacific Dunlop GNB Corp.,* 965 F.2d 369, 375 (7th Cir.1992). Moreover, while plaintiff's complaint undoubtedly implicates the Swartzes in

their role as minority shareholders, it implicates them in their official roles as well. Plaintiff's lawsuit rests on allegations that defendants misused their positions with TCF—both as majority shareholders and as corporate directors and officers—to defraud her of her interest in the company. If defendants provided plaintiff with false financial information, as plaintiff alleges they did, it was because of Lawrence Swartz's position as treasurer that they were able to do so. Similarly, the corporate transactions that plaintiff challenges occurred, in part, because of defendants' exercise of their official corporate authority.

The Barry defendants correctly point out that the complaint also alleges that defendants engaged in misconduct in their role as controlling shareholders by, for example, conspiring to coerce her into selling her shares. But the mere fact that the Swartzes wore two hats in their dealings with TCF and with plaintiff does not compel the conclusion that they were not sued, at least in part, because of their official status. *Heffernan*, 965 F.2d at 369–70; *Mooney v. Willys–Overland Motors*, 204 F.2d 888, 897 (3d Cir.1953). Section 302A.521 does not premise the right to indemnification or advances on a finding that corporate officers and directors were sued solely because of their official status. Moreover, where, as here, the allegations related to a defendant's official status are intertwined with the allegations related to a defendant's shareholder status, a corporate officer or director is entitled to indemnification. *Mooney*, 204 F.2d at 898. Because plaintiff's complaint alleges misconduct by the Swartzes in their official capacity as well as in their capacity as majority shareholders, the Court finds that they were sued by reason of their official status within the meaning of section 302A.521.

Such a result is consistent with the purposes underlying the indemnification statute. As the *Heffernan* court noted, indemnification statutes are intended to encourage individuals to serve as corporate officials and directors by ensuring that the corporation will bear the costs of defending against lawsuits challenging the performance of their corporate duties. *Heffernan*, 965 F.2d at

375. A cramped interpretation of the "by reason of" language would undermine the statute's effectiveness. Because a review of plaintiff's allegations reveals that the Swartzes were sued, at least in part, by reason of their status as former corporate officers and directors, the Court holds that they are entitled to advances under section 6.2 of the purchase and loan agreement.

Accordingly, based on the foregoing, and upon all the files, records and proceedings herein,

IT IS ORDERED that:

1. the Swartzes' motion for advance of legal expenses is granted;

2. within ten days from the date of this order, the Swartzes shall furnish to TCF an itemization of the reasonable legal expenses, including costs and attorneys' fees, incurred by them in defending against the claims in this litigation as of June 15, 1993;

3. thereafter, the Swartzes shall furnish to TCF monthly itemizations of the reasonable legal expenses, including costs and attorneys' fees, incurred by them in defending against the claims in this litigation;

4. the itemizations referred to in paragraphs 2 and 3 shall be deemed attorney work product and shall not be discoverable by plaintiff; and

5. within ten days of receiving the itemizations referred to in paragraphs 2 and 3, defendant TCF and defendant Charles Barry shall advance the Swartzes the reasonable legal expenses incurred by them in defending against the claims asserted by plaintiff in this litigation, subject to the undertaking of the Swartzes to repay those amounts in the event it is ultimately determined that the criteria for indemnification have not been satisfied.