Revised April 29, 2002

**UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT**

_____

**No. 00-51328**
_____

**In The Matter Of: WILLIAM L. MILLER,**

**Debtor.**

_____

**GAINES WEST, Chapter 7 Trustee,**

**Appellant,**

**versus**

**BALFOUR BEATTY CONSTRUCTION, INC.; BALFOUR BEATTY, INC.,**

**Appellees.**

_____

Appeal from the United States District Court
for the Western District of Texas
_____

April 24, 2002

Before JONES and DeMOSS, Circuit Judges, and FELDMAN, District
Judge:[*]

EDITH H. JONES, Circuit Judge:

        The issue in this case is whether a corporate officer is

entitled to indemnification under Delaware law for acts committed

for his own benefit before he was employed by the corporation.

_____

        [*]        District Judge of the Eastern District of Louisisna, sitting by
designation.

Affirming the decisions of the bankruptcy and district courts in the narrow circumstances presented, we hold that he is not so entitled, because he was not sued "by reason of the fact" that he was a officer of the potential indemnitor. See Del. Code Ann. tit. 8, § 145(a).

This case has been appealed by the Trustee of the estate of William L. Miller, who sought bankruptcy relief after being pursued to judgment by his former employer for misappropriation of proprietary information or improper use of trade secrets. Miller had worked for Abrams, Inc., a large Texas road construction contractor, unhappily for several years. He plotted his escape over a period of time, finally deciding to attract another major construction company, Balfour Beatty,[1] into the Texas market with him as its leader. While negotiating with Balfour Beatty in the autumn of 1993, and still an employee of Abrams, Miller took three boxes of Abrams documents and apparently used them to persuade Balfour Beatty of the attractiveness of competing in Texas. Miller then jumped ship to become Balfour Beatty's chief operating officer in Texas in February 1994.

Abrams immediately retaliated with a lawsuit against Miller and Balfour Beatty. In the state trial court, Abrams achieved a judgment for $1 million against Miller individually, but

---

[1] This opinion will refer to Balfour Beatty as shorthand for both corporate defendants.

the jury did not accept Abrams's claims that Balfour Beatty actually conspired with, participated in or profited from Miller's actions.

Miller sought Chapter 7 bankruptcy relief to avoid paying the Abrams judgment, and Abrams then sued for non-dischargeability of the debt.  The bankruptcy court entered judgment against Miller. The Fifth Circuit, however, disagreeing with both the bankruptcy court and district court in its appellate capacity, reversed one ground of liability but remanded with respect to another ground. See Miller v. J.D. Abrams, Inc., 156 F.3d 598 (5th Cir. 1998). Before trial on the remand to bankruptcy court, Miller settled with Abrams for only $75,000.

Abrams did not give up.  It continued to press the long-simmering issue of Balfour Beatty's obligation to indemnify Miller for the Abrams judgment under company bylaws and Delaware corporation law.  As a result, Miller's Chapter 7 Trustee demanded indemnification be paid to Miller's estate, prompting an adversary proceeding by Balfour Beatty against Miller, the Trustee and Abrams for declaratory relief against indemnification.   The Trustee counterclaimed in favor of indemnification.

"And now continues the saga", Bankruptcy Judge Frank Monroe wrote, indicating his frustration with six years of costly and vindictive litigation by both parties.  In a carefully detailed opinion after trial, the court found, among other things, that

3

Miller returned the documents to Abrams when asked, and it was undisputed that Miller never affirmatively used Abrams documents while an employee of Balfour Beatty at all, much less to compete unfairly against his former employer. The bankruptcy court also found that most of Miller's actions concerning Abrams documents were taken before Miller was employed by Balfour Beatty. The court concluded that "Miller was sued predominately because of activity he undertook to obtain employment, which was for his own personal benefit and not in furtherance of [Balfour Beatty's] policies or objectives." Consequently, Miller's conduct did not fall within the scope of any corporate duties and responsibilities for which Balfour Beatty is required to indemnify Miller.

The district court affirmed the judgment, and the Trustee has appealed.

## DISCUSSION[2]

In the absence of any express indemnity agreement between Miller and Balfour Beatty, the Trustee's right to recover turns on the Company's bylaws, which adopt Delaware corporation law. Article VIII of the corporate bylaws provides:

> To the extent permitted by § 145 of the General Corporation Law of the State of Delaware . . . [Balfour Beatty] shall indemnify any person who was or is a party . . . to any threatened, pending or completed action,

---

[2] In appeals from bankruptcy court, we review conclusions of law de novo and findings of fact for clear error. Matter of El Paso Refining, L.P., 171 F.3d 249, 253 (5th Cir. 1999).

4

suit or proceeding . . . by reason of the fact that he is or was a director, officer, employee or agent of the corporation.

> The pertinent portion of the Delaware General Corporation Law provides:

> (a) A corporation may indemnify any person who was or is a party or is threatened to be made a party to any threatened, pending or completed action, suit or proceeding . . . by reason of the fact that he is or was a director, officer, employee or agent of the corporation . . . if he acted in good faith and in a manner he reasonably believed to be in or not opposed to the best interest of the corporation . . . . The termination of any action, suit or proceeding by judgment, order, settlement, conviction, or upon a plea of nolo contendere or its equivalent, shall not, of itself, create a presumption that the person did not act in good faith and in a manner which he reasonably believed to be in or not opposed to the best interest of the corporation . . . .

Delaware Code Ann. tit. 8, § 145(a). Read together, these provisions require Balfour Beatty to indemnify Miller if he was sued "by reason of the fact" that he is an officer and employee of the corporation, and if Miller "acted in good faith and in a manner he reasonably believed to be in or not opposed" to Balfour Beatty's best interests. It will be unnecessary to reach the good faith prong of this test, since we conclude, like the bankruptcy and district courts, that Miller was not sued "by reason of the fact" that he was an officer and employee of Balfour Beatty.

Thirty-five years after its revision, this indemnification provision of Delaware law has seldom been

5

interpreted in court.  The lack of caselaw may seem detrimental to analysis of a close case, but on the other hand, it suggests that the law has admirably fulfilled the purpose of guiding public conduct without need to resort to the courts.  In any event, the available decisions establish a clear framework for analysis.  They proceed from the proposition that Delaware intended to encourage capable people to serve as corporate employees, officers and directors by permitting corporations to shield them from liability for their official activities.  Indemnification also ensures that corporate officials will and can defend themselves against unjustified suits and claims.  VonFeldt v. Stifel Fin. Corp., 714 A.2d 79, 87 (Del. 1998).  The cases thus broadly interpret "by reason of the fact" to require no more than a nexus between the corporate officers' or directors' official activity and the matter for which indemnification is sought.  See Witco Corp. v. Beekhuis, 38 F.3d 682, 693 (3d Cir. 1994); Heffernan v. Pacific Dunlop GMB Corp., 965 F.2d 369, 374 (7th Cir. 1992).  Further, whether a nexus exists is a question of fact to be determined by the trial court considering all the circumstances surrounding the proposed indemnification.  See Heffernan, supra; Plate v. Sun-Diamond Growers of California, 225 Cal. App. 3d 1115, 1124 (Cal. App. 1990) (interpreting "by reason of" language in California Corporations Code indemnification provision).

6

The parties agree on these general principles, but the Trustee asserts that Miller's status as a corporate officer, together with Abrams's motivation to sue him because he had jumped ship to work for a competitor, is sufficient to establish the requisite nexus as a matter of law. The Trustee contends, in other words, that Balfour Beatty's indemnity obligation covers any individual "who is sued because he is an employee - but not because of his actions as an employee." We reject this position. There is no caselaw support for interpreting "by reason of the fact" to allow indemnification for the mere status of being a corporate officer, director, employee or agent; indeed, the language seems to demand a causal connection.[3]

The Trustee also fears that if he does not prevail, corporations will be unable to offer indemnification against claimed misappropriation of trade secrets or violation of non-compete clauses as an inducement to employees they wish to hire from a competitor. Likewise, employers would not be able to indemnify their new recruits against suits from vindictive former employers.

---

[3] The decision in Essential Enterprises Corp. v. Automatic Steel Prod., Inc., 164 A.2d 437 (Del. Ch. 1960), is not to the contrary. While that decision interprets "by reason of" in an earlier corporate indemnification statute to apply "solely because of the offices [the directors who were sued] held," 164 A.2d at 441, the lawsuit sought to oust those who were then serving as directors. There was no question of a nexus between their current official positions and the lawsuit's allegations.

7

These concerns, while not insubstantial, are not realized in the case before us. The right to corporate indemnification is necessarily judged case-by-case. Even the Trustee agrees that "conduct that occurs prior to employment cannot, by definition, be related to an employee's corporate duties and therefore cannot be a basis for indemnity." Trustee's brief at 25. See Sorensen v. The Overland Corp., 242 F.2d 70 (3d Cir. 1957) (no indemnification for suit arising out of employment contract that plaintiff negotiated with company before he became an officer or director).

Yet that is exactly the finding that the bankruptcy court made and the district court affirmed: Miller was sued in his personal, not official, capacity for actions before he was employed by Balfour Beatty that benefitted only himself. There is abundant support for this finding in the record. Abrams's state court petition did not sue Miller in his capacity as an officer or employee of Balfour Beatty. Indeed, very little of the complaint alleged facts occurring after Miller was employed by Balfour Beatty. The petition alleged various causes of action against Miller and Balfour Beatty, but only the claims for Miller's breach of fiduciary duty toward Abrams, misappropriation of Abrams's proprietary information and trade secrets, and civil conspiracy were submitted to the jury. On each count, the jury was instructed that Balfour Beatty was liable for the acts of its employees or agents. The jury verdict exonerated Balfour Beatty and rejected the

8

fiduciary duty breach and civil conspiracy claims, but they held Miller personally liable because he "misappropriated proprietary information or made an improper use of trade secrets belonging to Abrams." The bankruptcy court, finding Miller a credible witness, accepted Miller's uncontradicted explanation in his testimony before the bankruptcy court that he had taken three sets of documents. He used two sets solely for the purpose of getting a job with Balfour, and the other set remained boxed up when he left Abrams but was never used after he became employed with Balfour. He returned the documents to Abrams when asked.

The most likely inferences from these facts and circumstances are that (a) Abrams sued Miller primarily for Miller's individual actions; (b) Miller was held liable for actions that he took for his personal benefit before he was employed by Balfour; (c) Balfour did not participate in or profit from those actions. In sum, Miller was not sued "by reason of the fact" that he was employed by Balfour.[4] The Trustee has not proved these findings to be clearly erroneous.

This is not a case in which the gravamen of the complaint was against Miller's conduct as an officer or employee of Balfour. Compare Heffernan, 965 F.2d at 373, 374 ("the gravamen of Pacific's complaint is that Heffernan, at least in part because he was a

---

[4] That Balfour defended both itself and Miller jointly does not bear on the propriety of indemnification.

9

director . . . either knew or should have known that [the companies] may be subject to environmental and other liabilities . . ."). Instead, we hold that no nexus existed because, as the state court judgment revealed, the lawsuit related to conduct that occurred when Miller was not employed by the indemnifying company, and Miller's personal motives, rather than Balfour Beatty's corporate functions, were the primary reason for the conduct giving rise to the lawsuit. The scope of corporate indemnification under Delaware law, while justly broad, cannot cover individual conduct by a person that is wholly outside and indeed prior to his corporate employment.

The Trustee argued as a fallback position that Balfour Beatty must indemnify Miller for the Abrams lawsuit under a theory of estoppel. This theory would apply to corporate indemnification the concept from insurance law that when the insurer defends its insured without a reservation of rights, it is later estoped to deny coverage. See e.g., Farmers Texas County Ins. Co. v. Wilkenson, 601 S.W.2d 520, 521-22 (Tex. App. 1980). The Trustee cites no cases suggesting that the reservation of rights theory in insurance law should be transferred to corporate indemnification law. Under Erie R.R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817 (1938), there is no basis for us to hold, much less "guess," that Delaware would so interpret its corporate indemnification provision. This point is meritless.

10

For the foregoing reasons, the judgments of the bankruptcy and district courts denying relief to the Trustee are **AFFIRMED.**