UNIVERSITY SAVINGS ASSOCIATION, Appellant,

v.

Walter S. BURNAP, Appellee.

No. B14-88-815-CV.

Court of Appeals of Texas, Houston (14th Dist.).

Feb. 1, 1990.

David D. Sterling, Houston, for appellant.

David Anderson, Houston, for appellee.

Before ROBERTSON, SEARS and DRAUGHN, JJ.

## OPINION

ROBERTSON, Justice.

Appellee filed suit against appellant for reimbursement of costs expended in defense of a separate lawsuit filed by certain shareholders of Austin Savings Association against appellee, a director of Austin Savings Association (predecessor to appellant, University Savings). Upon the jury's answer to the sole issue submitted to them, the trial court rendered judgment for appellee. Appellant brings four points of error, but viewing the issue as presenting only a question of law, we find it unnecessary to address appellant's issues. We affirm the judgment of the trial court.

Appellee Burnap was a shareholder, an officer, and a director of Austin Savings Association. Additionally, he served on the operating or management committee. While the evidence is not totally clear, it appears that by reason of these duties, appellee was considered a part-time employee and received compensation therefor. In 1978, Burnap began negotiating the sale of the stock in Austin Savings. His position was that he was negotiating on behalf of all stockholders, while the position of University Savings was that he was acting only for the "control group" of which he (Burnap) was a member. In our view, however, resolution of this issue is immaterial. The end result was that Entex made an offer to purchase, for $60 per share, all of the Austin Savings stock and to merge Austin Savings with its subsidiary, University Savings.

Some seven individuals, all of whom sold their stock in Austin Savings shortly prior to the execution of the letter of intent to merge the two savings associations, filed suit in federal court against appellee, three other individuals, and a corporation, seeking as damages the difference in the price at which they sold their stock and the amount paid by Entex/University Savings. The complaint alleged various securities law violations, generally referred to by appellant as "tipping inside information."

A by-law of Austin Savings Association provided:

Indemnification: Any person shall be indemnified or reimbursed by the association for reasonable expenses including, but not limited to, attorneys' fees actually incurred by him or recovered against him in connection with any action, suit, or proceeding, instituted or threatened, judicial or administrative, civil or criminal to which such person is made a party solely by reason of his being or having been a director, officer or employee of this association; provided, he is not adjudicated in such action, suit or proceedings to have been guilty of a breach of good faith, to have been negligent in the performance of his duties, or to have committed an act or failed to perform a duty for which there is a common law or statutory liability.

Burnap's initial request for reimbursement of legal expenses incurred for his defense of the suit brought by the shareholders was denied pending a decision on the federal lawsuit. After the federal lawsuit was terminated by summary judgment in favor of Burnap, he again requested reimbursement for his legal expenses in the amount of approximately sixty thousand dollars. University Savings again denied reimbursement. The reason for such denial, given at trial, was:

Well, under the bylaws, it's very closely written, and it says that to get indemnification in a suit that's brought solely against them in their capacity as a director. In this instance, the allegation, although they weren't found to be true, the suit was based on the belief by the Plaintiffs that Mr. Burnap had tipped the information he had to these two offices (sic) of the Association who bought the Plaintiff's stock. And he as a tipper, as we talked about a few minutes ago, could not act, be acting as director if he was engaged in tipping.

This suit for reimbursement resulted.

In its first point of error, appellant contends it was entitled to judgment because, as a matter of law, appellee was not enti-

tled to indemnification; therefore, the court erred in denying its motions for summary judgment and judgment notwithstanding the verdict. In its second point of error appellant contends there is no evidence or, alternatively, insufficient evidence, to support the jury finding that Burnap was made a party to the federal lawsuit solely by reason of his being an officer, director, or employee of Austin Savings. In its third point of error appellant complains of the admission of hearsay evidence. By its fourth point of error, appellant complains of the wording of the only issue submitted to the jury. As stated above, we view the issue before the trial court and before this court as one of law only; therefore, we need not address appellant's points of error.

As quoted above, the provision of the by-laws providing for reimbursement provides that one is to be reimbursed for his expenses in connection with any action "to which such person is made a party solely by reason of his being or having been a director, officer or employee" of Austin Savings. The second amended complaint in the federal lawsuit, the live pleading at the time summary judgment was granted, alleged the factual basis for the lawsuit as: *"Defendant Burnap was at all relevant times a Director* and principal stockholder *of Austin Savings Association"* (emphasis added). The complaint further alleged that "[o]n or about July 1, 1978, *Defendant Burnap,* acting in concert with other defendants and other unnamed defendants ... *undertook to negotiate the sale of the controlling interest in Austin Savings Association without disclosing to any of the plaintiffs that they had entered into any negotiations of the anticipated magnitude of the proposed sale of all of the outstanding shares of the Association"* (emphasis added).

The complaint alleged various violations of both state and federal securities acts, and the business and commerce code. In the third count, the plaintiffs alleged that *"Defendants were under a duty to speak to the shareholders of Austin Savings Association concerning the anticipated sale of control stock in the association and concealment of the truth amounted to an affirmative misrepresentation of a material fact ..."* (emphasis added).

■ Under its first point of error, appellant argues "[w]hether the by-law obligates University Savings, as the successor to [Austin Savings Association], to indemnify Burnap is a question of law for the court. There was no pleading that the by-law was ambiguous. As Texas courts have long recognized, the construction of a written instrument which is not alleged to be ambiguous is a question of law for the court." We agree. As we stated in *Medical Towers Ltd. v. St. Luke's Episcopal Hosp.,* 750 S.W.2d 820, 822 (Tex.App.—Houston [14th Dist.] 1988, writ ref'd n.r.e.):

Texas law has long accepted the rule that the question of whether a contract is ambiguous is a question of law for the court. *R & P Enterprises v. LaGuarta, Gavrel & Kirk,* 596 S.W.2d 517, 518 (Tex.1980). The law also provides extensive guidance to assist the court in making this determination. A contract is ambiguous when it is subject to more than one reasonable meaning, unresolvable by rules of interpretation. *Skelly Oil Company v. Archer,* 163 Tex. 336, 356 S.W.2d 774, 778 (1962). On the other hand, the disagreement over the interpretation of an instrument does not automatically make it ambiguous. *Sun Oil Company (Deleware) v. Madeley,* 626 S.W.2d 726, 727 (Tex.1982); *Maxwell v. Lake,* 674 S.W.2d 795, 801 (Tex.App.—Dallas 1984, no writ). Nor does uncertainty or a lack of clarity in the language chosen by the parties suffice to render a contract ambiguous. *Universal C.I.T. Credit Corp. v. Daniel,* 150 Tex. 513, 243 S.W.2d 154, 157 (1951); *City of Houston v. Howe & Wise,* 323 S.W.2d 134, 141–142 (Tex.Civ.App.—Houston 1959, writ ref'd n.r.e. 373 S.W.2d 781). Ambiguity results when the intention of the parties is expressed in language susceptible of more than one meaning, but when a contract is silent, the question is not one of interpreting the language but rather one of determining its effect. *Maxwell v. Lake,* 674 S.W.2d at 802; *Summit Insurance Company of New York v. Cen-*

tral National Bank of Houston, 624 S.W.2d 222, 226 (Tex.App.—Houston [1st Dist.] 1981, writ ref'd n.r.e.). On the contrary, when the contract is so worded that a court may properly give it a certain or definite legal meaning, it is not ambiguous. R & P Enterprises, 596 S.W.2d at 519; Alba Tool and Supply Company, Inc. v. Industrial Contractors, Inc., 585 S.W.2d 662, 664 (Tex. 1979). An unambiguous contract must be interpreted by the court as a matter of law. Coker v. Coker, 650 S.W.2d 391, 393 (Tex.1983).

■ While appellant recognizes this as the rule, it argues nevertheless that "[t]o give effect to the language of the by-law, ASA (Austin Savings) is obligated to indemnify Burnap only if he was sued in his capacity as an ASA director," meaning that Burnap must have been sued for something "he did or failed to do while acting in his capacity as a director, officer or employee" of Austin Savings Association (emphasis added). In other words, appellant argues that it was necessary for the complaint to allege that Burnap acted illegally or violated a duty in the performance of his duties as an officer, director, or employee of Austin Savings. Appellant then reasons that Burnap could not have been acting as a director in tipping inside information because that is not a duty of a director. In support of this argument, appellant cites Sorensen v. Overland Corp., 142 F.Supp. 354, (D.Del.1956), aff'd 242 F.2d 70 (3d Cir.1957), and Spring v. Moncrieff, 10 Misc.2d 731, 173 N.Y.S.2d 86 (N.Y.Sup.Ct.1958). The facts in each of these cases easily distinguish them from the instant case and are not authority for the issue before us. We do not agree that the by-law unambiguously mandates the interpretation asserted by appellant.

While it was not necessary that Burnap be a director of Austin Savings to tip inside information of the impending merger, the fact is that the complaint against him, which he had to defend, did so allege. And while the plaintiffs' allegation in that proceeding that Burnap was a director of Austin Savings does not automatically result in his having been "made a party solely by reason of his having been a director", it seems obvious that when the federal complaint went further and alleged that he "undertook to negotiate the sale of the controlling interest in Austin Savings Association without disclosing to any of the plaintiffs" such undertaking and that he was further "under a duty to speak to the shareholders of Austin Savings Association concerning the anticipated sale of the control stock in the association", Burnap was made a party "solely by reason of his being or having been a director." Had he been acting solely as a shareholder, he would have had no duty to advise other shareholders of his plans to sell his stock. Clint Small, a shareholder, director, and general counsel for Austin Savings Association, as well as shareholder and director for University Savings Association, and whose law firm represents University Savings, testified on behalf of appellant at trial and, in answer to the following question, stated:

Q. Now, if Mr. Burnap and Mr. Phillips had reached a deal for just the control group stock, would they have breached any fiduciary duties to the other shareholders of Austin Savings?

A. No. I don't understand that there is any duty on the part of a — a majority of the stock or a control group of carrying along minority stockholders on the sale of their stock.

Additionally, counsel for appellant, during oral submission agreed with Mr. Small's statement.

Appellant asserts this is a case of first impression and our research has not produced any case dispositive of the issue presented. The result we reach, however, is consistent with the law concerning an insurance company's duty to defend under an insurance contract. Under those provisions, the duty to defend is determined solely from the face of the pleadings in light of the policy provisions. Hartford Fire Ins. Co. v. Rainbow Drilling Co., Inc., 748 S.W.2d 262, 264 (Tex.App.—Houston [14th Dist.] 1988, no writ). We can discern no valid reason why, at least under the facts here presented, the same result should not obtain under the reimbursement provision of the by-law.

From what we have said, it follows that there was no fact issue for the jury to

resolve. The submission of a question of law to the jury, however, is harmless absent some showing of extraneous prejudice. If the issue is answered as the court should have decided, there is no prejudice. If the issue is answered to the contrary, the finding would be immaterial and hence should be ignored. *Medical Towers Ltd.,* 750 S.W.2d at 826. We overrule appellant's points of error.

■ Appellee, by cross-point, challenges the trial court's award of prejudgment interest at the rate of six percent, contending he is entitled to interest at the rate of ten percent. In *Rio Grande Land & Cattle Co. v. Light,* 758 S.W.2d 747, 748 (Tex. 1988), the supreme court made it plain that where the contract does not contain facial provisions to determine damages, the prejudgment interest rates applicable to judgments under TEX.REV.CIV.STAT.ANN. art. 5069–1.05 apply. *See also: Acco Constructors, Inc. v. National Steel Prod.,* 733 S.W.2d 368, 371 (Tex.App.—Houston [14th Dist.] 1987, no writ). Accordingly, the trial court erred in setting prejudgment interest at six percent. Appellee's cross-point is sustained and the judgment is reformed to reflect pre-judgment interest at the rate of ten percent.

As reformed, we affirm the judgment of the trial court.