**Marvin M. GROVE, Executor of the Estate of Marvin H. Grove, Appellant,**

v.

**DANIEL VALVE COMPANY, d/b/a Daniel Industries, Inc.; M & J Valve Division, Appellee.**

No. C14–93–00321–CV.

Court of Appeals of Texas, Houston (14th Dist.).

March 10, 1994.

Rehearing Overruled April 7, 1994.

Kenneth S. Wall, Steven C. Oaks, C. Le-Roy Melcher, Houston, for appellant.

Mark A. Robertson, William J. Boyce, Houston, for appellee.

Before ROBERTSON, CANNON and DRAUGHN, JJ.

## OPINION

ROBERTSON, Justice.

This appeal involves the application of Delaware's indemnification statute in the con-

text of a summary judgment proceeding. The trial court granted summary judgment for appellee, finding Marvin H. Grove was not sued according to the requisites of the statute, namely, "by reason of the fact" that he was an officer, director, employee, or agent of the defendant corporation's predecessor. Appellant brings four points of error, the first complaining of the court's error in finding Marvin H. Grove was not sued in this capacity, and three others complaining of insufficient summary judgment proof to sustain the granting of the motion. We reverse and remand the judgment of the trial court because of material fact questions raised by appellant.

The facts of this case require detailing the history of a number of business entities. In 1950, Marvin H. Grove and Julia E. Grove formed a general partnership called M & J Development Company. At some unknown point in time, a corporation was formed called M & J Valve Company. Marvin H. Grove was president, director, and chief executive officer of this corporation, all of whose stock was owned by the partnership. The record shows that Mr. Grove's vocation and occupation was the inventing and designing of high-pressure valves and that he directed a team of engineers at M & J Valve in pursuing this line of work. At issue in this case is the design and testing of the M–303 valve ("valve"). Because the record does not show the date of incorporation for M & J Valve, we cannot be certain that all of Mr. Grove's work in designing the valve occurred in the corporate framework. The record does tell us however that the first two valves at M & J Valve were produced in 1962.

In 1968, M & J Development entered into an exclusive licensing agreement with a corporation called Welmet Industries regarding the manufacture of these valves. Welmet's valve division operated under the name of Guelph Engineering. Guelph Engineering received a purchase order from NOVA, a Canadian corporation, for two of the M–303 valves to be used in a natural gas compressor station in the Canadian province of Alberta. In 1980, an explosion and fire occurred at this facility, causing an amount of damages the parties later stipulated at 30 million dollars. Litigation ensued, hereinafter referred to as the NOVA litigation. NOVA first sued only Guelph, but later added the other parties in its "amended amended statement of claim." The suit aimed to determine responsibility and assess liability accordingly for negligence in designing the valve whose failure allegedly instigated the explosion.

In the interim, however, between NOVA's installation of the valve and the explosion, the partnership of M & J Development sold M & J Valve Company in 1977 to Daniel Industries for a sum in excess of 10 million dollars. This information obviously came to the attention of the NOVA plaintiff after the initial filing of the lawsuit, and thus explains the additional parties added in the amended amended statement of claim. The additional defendants included Marvin H. Grove; Marvin H. Grove, as executor of the estate of Julia E. Grove, deceased; M & J Development Company; Daniel Valve Company d/b/a Daniel Industries: M & J Valve Division.

Marvin H. Grove expended sums he estimates at more than 1 million dollars in this NOVA litigation, which resulted in finding none of the defendants liable. Mr. Grove's son, Marvin M. Grove, filed the lawsuit from which he is now appealing to recover some $300,000 in attorneys' fees and other costs not yet recouped from that litigation. Appellee urges us to restrict our inquiry to the language of the complaint in the Canadian litigation in determining Grove's rights to indemnification, whereas appellant urges a broader interpretation of Delaware's indemnification statute itself to include the unique circumstances of his case. Surprisingly, there is little guidance in this area from the Delaware courts. *See Heffernan v. Pacific Dunlop GNB Corp.*, 965 F.2d 369, 372 (7th Cir.1992) (noting dearth of case law on Delaware's indemnification statute).

■■■ Because this complex question of law comes to us in a summary judgment context, the movant for summary judgment had the burden to prove its right to judgment as a matter of law. Tex.R.Civ.P. 166a; *McFadden v. American United Life Ins. Co.*, 658 S.W.2d 147, 148 (Tex.1983). This burden requires showing that no material questions of fact remained that would mandate the use of a fact-finder. The non-movant's obligation

is to point out and prove up to the trial court any fact questions remaining which would preclude the granting of summary judgment. However, this burden does not shift to the non-movant until the movant establishes his right to summary judgment. *Casso v. Brand,* 776 S.W.2d 551, 556 (Tex.1989). In our review of the summary judgment proof, we resolve any doubt in favor of the non-movant. *Nixon v. Mr. Property Management Co.,* 690 S.W.2d 546, 549 (Tex.1985).

■ In deceptively simple language, the Delaware indemnification statute at issue states the following: "A corporation may indemnify any person who was or is a party or is threatened to be made a party to any threatened, pending, or completed action, suit or proceeding, whether civil, criminal, administrative, or investigative.... *by reason of the fact that he is or was a director, officer, employee or agent of the corporation...*." DEL.CODE.ANN. tit. 8, § 145(a) (1991) (emphasis added). If such officer, director, employee, or agent is successful on the merits of the underlying case, then the indemnification becomes mandatory. *Id.* § 145(c). The record shows, and the parties do not dispute, that the underlying suit was successfully defended on the merits. Further, most of the facts of Marvin H. Grove's involvement with the development of the valve at issue are not contested. Mr. Grove invented the valve, developed it, and tested it thoroughly for commercial use. The extent of his involvement with the valve's development is detailed in the proceedings comprising the NOVA litigation, submitted in the instant case as an appendix to Grove's response to appellee's motion for summary judgment.

■ The essence of our final decision in this case is that we reject appellee's argument that Delaware case law mandates looking only to the complaint in determining a party's potential right to indemnification. It is beyond question, however, that the complaint provides the starting point of our inquiry as well as the primary means of determining the connection between a party's corporate status and the allegations in the complaint itself. *Heffernan v. Pacific Dunlop GNB Corp.,* 965 F.2d 369, 373 (7th Cir.1992);

*Mooney v. Willys–Overland Motors,* 204 F.2d 888, 896 (3rd Cir.1953).

The amended amended statement of claim in the original proceeding in Canada alleges failure to warn and negligent design and manufacture of the valve. Appellee strongly urges the significance of the complaint's distinction between the corporate entity, M & J Valve Company, and the group of persons it called simply "Grove", consisting of Marvin H. Grove both individually and as executor of the estate of Julia E. Grove, and the partnership, M & J Development. According to appellee, the significance of this dichotomy lies in the NOVA plaintiff's mentioning the corporation by itself, without any reference to Grove's corporate status, and naming Grove individually only as within the context of the partnership. While the appellee's literary analysis of the complaint giving rise to this interpretation has some merit, we cannot rest any decision on this one document.

■ Essentially, the complaint manifests the NOVA plaintiff's wish to impose liability on the party responsible for the alleged negligent design of the valve. The summary judgment evidence shows that Marvin H. Grove was the inventor/designer of the valve at issue. The difficult aspect of this case, however, hinges on the fact that the NOVA plaintiff's complaint does not specifically identify Marvin H. Grove as the individual so responsible. We find that the record, the appellant, and appellee present conflicting information regarding when the particular valve was designed and in what capacity Marvin H. Grove was serving the M & J Valve Company when he designed the valve. This ambiguity suggests a material fact question, and we find this question to be material for the reasons we develop throughout the rest of this opinion.

Appellee asserts in a supplemental letter brief that Marvin H. Grove either designed the valve individually and would thus be liable individually, or designed it as a member of the general partnership, M & J Development, and would thus also be individually liable as a general partner. J. WILLIAM CALLISON, PARTNERSHIP LAW AND PRACTICE, COMMERCIAL LAW SERIES, § 2.03 at 2–5 (1992)

(noting potential for unlimited liability in general partnership). Appellee asserts that it necessarily follows that NOVA did not sue Marvin H. Grove as an officer, director, employee, or agent of M & J Valve, the corporation bought by Daniel Industries. However, we find no evidence appears in the record or is alluded to in the complaint to establish unequivocally that Grove designed the valve completely on his own, beyond the boundaries of an organized business entity. Further, we cannot accept appellee's simplistic rationale in view of the history and purpose of the Delaware statute's indemnification provision for employees.

It is true that Marvin H. Grove could be individually liable for any negligent design, even as an employee of the corporation. However, the corporate employer is also liable when the employee's negligence occurs pursuant to the employee's good faith execution of his job description. *See Broaddus v. Long*, 135 Tex. 353, 138 S.W.2d 1057, 1059 (1940) (stating rule that master liable for servant's negligence if it occurs in furtherance of master's business for which servant hired). The indemnification statute, however, expressly provides that if an employee's job exposes him to liability, then the corporation must indemnify him if the employee is successful on the merits of the suit. DEL. CODE ANN. tit. 8, § 145(c) (1991). The Delaware statute only relatively recently added the expanded indemnification protection for employees and agents because such persons had previously found such protection in the common law, arising presumably out of the respondeat superior doctrine. Allen M. Terrell, Jr., *Indemnification of Employees*, 5 DEL.J.BUS.L. 251, 257 (1980). The policy behind indemnifying employees parallels that for officers and directors—that policy being "to encourage employees to accept positions of responsibility and to make good-faith decisions without fear of penalty." *Id.* at 266. The reality however is that no plaintiff would sue an individual employee because the corporate entity generally has the greater financial resources and thus poses the greatest possibility of a large recovery for an injured plaintiff. In the instant case, however, the individual was wealthy and capable of paying not only his own legal fees but a possible

judgment as well. The NOVA plaintiff included the corporate entity also, presumably, not only as the usual matter of course in naming all parties possibly involved in the alleged negligence, but also to increase the monies available in satisfaction of a possible judgment.

We agree with appellant that NOVA brought in Marvin H. Grove originally because of his obvious connection with the partnership and the partnership's apparent relationship with the valve's design by virtue of its holding the Canadian letters patent for it. As the trial progressed, however, it appears this status was no longer the sole connection of Mr. Grove to the substance of the lawsuit which concerned the valve's design. Appellant's summary judgment proof reveals this close connection and thus raises a question as to whether Marvin H. Grove's leadership in the continual refinements and testing of the valve's design occurred as part of his work as an employee of M & J Valve. Although there is evidence showing Marvin H. Grove did pursue this work, there remains the question of whether his work in this capacity can be attributed to the actual valve at issue in the NOVA litigation. If all of his work relevant to the valve occurred before the formation of the corporation, then there is no right to indemnification. Therefore, because it appears that Marvin H. Grove was sued for reasons other than his status as general partner of the partnership, there may arise on remand also the necessity of apportioning those expenses incurred defending the individual liability and the possible corporate liability arising out of his employee status.

Both parties to this appeal present valid policy arguments supporting their respective interpretations of the indemnification. Appellant's concern is one actually addressed in *Heffernan*. Appellant argues that if we hold that the only means of assessing indemnification rights is by looking at the four corners of the complaint, as appellee urges, we will encourage artful crafting of pleadings which could circumvent a corporation's obligation to indemnify under Delaware law. *See Heffernan*, 965 F.2d at 374 (observing defendant corporation's "incentive and opportunity to

structure its complaint so as to avoid triggering its subsidiaries' duty of indemnification"). The court in *Heffernan* thus perceived that the complaint does not always tell the whole story or name parties in their correct capacities. To alleviate this problem in *Heffernan* as well as in future cases, the court adopted a modus operandi which entailed synthesizing the lawsuit's pleadings to determine the essence of the lawsuit and then ascertaining the nexus between a party's corporate status and the complaint alleged. *See id.* (rejecting argument that only statutory provision under which corporate personnel sued or form of complaint controls indemnification question).

We find that courts can diminish greatly the danger of encouraging the crafting of petitions to avoid indemnification liability by analyzing the underlying substance of the complaint and not merely the form. The court in *Heffernan* found its analysis to be the envisioned result of Delaware's broad indemnification statute which in effect encourages a "case-by-case approach" to determining a party's right to indemnification. *Id.* at 374; *see also Advanced Mining Systems, Inc. v. Richard A. Fricke*, 623 A.2d 82, 83 (Del.Ch.1992) (noting case-by-case approach). Assessing the complaint in this manner, looking for ways in which a party's role as director, officer, employee or agent is implicated in the underlying lawsuit, precludes another party from crafting the petition to avoid any obligation to indemnify. Thus, we reject appellee's argument that the pleadings must be the sole arbiter of indemnification rights. Indeed, none of the cases cited by the parties reveal a close literary analysis of the pleadings, such as appellee posits, to determine indemnification rights.

Although neither appellant nor appellee cite a case which we find to be dispositive of this issue, the cases are instructive in our determining the required parameters of the nexus between complaint and corporate status. Even *Heffernan* in fact makes a narrow holding. Despite its helpful language for appellant, its holding does not reflect on the plaintiff's ultimate right to indemnification. Rather, the posture of that case before the court was merely to determine whether the plaintiff's case had been prematurely dismissed. *Heffernan*, 965 F.2d at 376. Appellee likewise presents no case to elucidate the precise point of law in this case. A case cited to frequently by appellee, *Sorensen v. The Overland Corp.*, 142 F.Supp. 354 (D.Del. 1956) is not on point because the complaint in *Sorensen* alleged improprieties concerning an employment contract a director entered into in 1944, prior to his even becoming a director. On this basis, the court easily found there was no connection between his status as director and the complaint concerning the employment agreement. *Sorensen*, 142 F.Supp. at 359. It bears mentioning that at the time *Sorensen* was decided, the Delaware statute did not provide indemnification for employees, since that amendment occurred in 1967. Nonetheless, it would appear the holding would be the same because his employee status was not implicated, as an employment contract is indeed a personal benefit, much like the sale of one's own stock in a company, and does not coincide with the employee's substantive work furthering the corporation's business activities.

The few other cases on this topic take place primarily in the context of stock sale agreements in which parties played dual roles of the private individual as stockholder and the director as stockholder. In *Heffernan*, for example, the complaint concerned a misrepresentation in a prospectus. The purchaser of the stock realized after the sale that the corporation had some environmental liabilities which were not disclosed before the time of sale. Mr. Heffernan sold his own stock, but his status as director was directly implicated in the underlying lawsuit because of the nature of the complaint. The ordinary private stockholder would generally have no means of readily ascertaining such characteristic of his or her stock. A director, however, by virtue of her position as directing corporate policy, would be in a position to know of such liabilities and as such, could not realistically segregate the role of stockholder and director. The *Heffernan* court thus found a nexus between plaintiff's status as director and the allegations in the underlying suit regarding the misrepresentation. *Id.* at 373. The question still to be determined, however, was whether the nexus was sufficient to meet

the "by reason of the fact" language in the statute. *Id.* at 375.

Similarly, in a case out of this court, we found that a party requesting indemnification was so entitled because his status as director was implicated in his negotiation of the sale of the controlling stock of the savings and loan which he served as director and officer. *Univ. Sav. Ass'n v. Burnap,* 786 S.W.2d 423, 424 (Tex.App.—Houston [14th Dist.] 1990, no writ). In addition to holding these corporate positions, Burnap also held stock in the corporation. He began negotiations for the sale of all of the stock of the company and found another savings and loan offering $60 per share and a merger of the two savings and loans. A letter of intent concerning this pending sale was issued, but not before another group of stockholders sold their stock. This group filed suit alleging securities law violations generally known as "tipping." The allegation was that Burnap had a duty to advise the plaintiffs of his plans to sell the stock, and they were harmed by his failure to comply with this duty. This court found a right to indemnification because the type of allegations made by the plaintiffs implicated his duties as a director, and we stated the following: "Had he been acting solely as a shareholder, he would have had no duty to advise other shareholders of his plans to sell his stock." *Id.* at 426. Appellee cites this case as controlling for the proposition that a right to indemnification is determined by a strict reading of the document so authorizing. However, in *Burnap* we did not hold so sacred the alignment and naming of parties so as to preclude any other analysis. Indeed, we stated that merely naming a party as a director did not necessarily mean he was sued in that capacity. *Id.* We find the converse to be equally true and applicable in the instant case. We found in *Burnap* that the issue required more analysis of the connection between the complaint and his corporate status, and we accordingly found that the substance of the allegation, that Burnap had failed to disclose the negotiation of a sale of stock when he had a duty to do so, implicated his position as a director. *Id.*

Because *Burnap* involved interpreting one corporation's by-laws providing for indemnifi-

cation, albeit with similar language to the Delaware statute, it is not as persuasive as the following two cases which found employment or agency relationships warranting indemnification under Delaware law. *See Cambridge Fund, Inc. v. Abella,* 501 F.Supp. 598, 614 (S.D.N.Y.1980); *Merritt–Chapman & Scott Corp. v. Wolfson,* 321 A.2d 138, 142 (Del.Super.Ct.1974). In *Merritt–Chapman,* the particular party seeking indemnification, Kosow, was chairman of the board and president of Industrial Finance Corporation (Industrial), a wholly-owned subsidiary of Merritt–Chapman & Scott (MCS). Kosow served in this position pursuant to an employment agreement between MCS and Industrial in which Kosow agreed to manage private financing and lending activities of MCS, "subject to its control and direction." 321 A.2d at 141. The court found Kosow was an employee or agent of MCS because of this employment agreement for purposes of the indemnification statute. *Id.* at 142. As in the instant case, the corporate entity insisted that this connection was not relevant because the underlying lawsuit did not reveal that Kosow was sued "by reason of the fact" he held this corporate status. The substance of the suit was a charge concerning the impropriety of his actions in a stock repurchase plan that constituted a fraud upon the MCS stockholders. The court found that Kosow participated in the inside information concerning the fraud. Most significantly, the court found that Kosow was prosecuted *because of* this employment relationship with MCS. *Id.* at 142. Thus, the employment agreement provided the nexus or connection with the corporation, and because the substance of Kosow's duties under the agreement was implicated in the suit, the court found Kosow was sued because of this nexus. Further, the nexus was sufficient to meet the "by reason of the fact" language in the indemnification statute.

We find the *Cambridge Fund* case to be particularly instructive in ascertaining the generous parameters the Delaware statute intended in indemnifying the broad array of corporate personnel that it does. The interesting facts in this case concerned alleged improprieties in the management of a mutual fund ("the fund"). A group of persons re-

ferred to as "management" acted as the investment advisor of the fund, and the individual defendant Abella, was employed as portfolio manager for management's sole client, the fund. *Cambridge Fund*, 501 F.Supp. at 614. Abella's job required analyzing various corporations to determine their potential as sound investments for the fund. Abella would make these recommendations for the fund to management. As in the instant case, the parties were contesting whether management and Abella were made parties to a Securities and Exchange Commission (SEC) proceeding by reason of the fact that at the time of the alleged improprieties, they were acting as agents of the fund. *Id.* at 614. The SEC proceeding involved allegations that Abella and Management, among others, caused the fund to make certain purchases for the fund's portfolio which purchases violated the Investment Company Act.

As in *Merritt–Chapman*, the court looked outside the complaint, in this case to the terms of a contract, to find the connection between the individual, the investment advisor, and the entity, the mutual fund. As a result, the court stated that management was made a party to the SEC proceeding because management had taken its actions pursuant to the contract. The court found that management and Abella were agents of the fund because of the "unusual structure of the fund" and because "the duty of investigating and recommending portfolio securities, which would ordinarily be entrusted to an employee or officer of the fund, is here entrusted to the investment advisor." *Id.* at 614. The court further found that the policy underlying indemnification in general supported this finding because the statute was enacted "primarily to permit corporate executives to be indemnified in situations where the propriety of their actions as corporate executives is brought under attack." *See id.* at 614–15 (citing FOLK, THE GENERAL DELAWARE CORPORATE LAW, at 98). This case is particularly interesting for the lengths the court went to in finding indemnification rights. The court implicitly recognized the relationship was not technically one of agency because the fund did not actually control their actions. *Id.* at 614. Yet the court found that the two parties were "agents within the meaning of the

Delaware indemnification statute" and found the unusual structure of the fund to also support finding a right to indemnification. *Id.*

 Applying the lessons culled from the above cases, we determine that Marvin H. Grove's multi-faceted position was implicated in the substance of the NOVA plaintiff's complaint and that he was sued because of his substantial connection with the valve. This information may not have been available to the NOVA plaintiff at the initial filing of the complaint, and we find that it would be inequitable to deprive a potentially successful litigant of his legal right to indemnification simply because all the facts are not known at the initial pleading stage. The trial process, particularly in the NOVA litigation, can be long and arduous. Much information is revealed in the course of this process, and so it came to light in the NOVA litigation the significant role Marvin H. Grove himself played in the development of the valve under the auspices of M & J Valve. The facts of *this* case easily confuse the legal issue because M & J Valve was no longer in existence at the time of the trial, because Marvin H. Grove was wearing many different hats of the corporate entity, and because there simply are not enough facts establishing whether he was working with M & J Valve in these capacities when the bulk of the design work and testing was being done for the valve.

 This case demonstrates the very reason the Delaware legislature aimed to include employees within the indemnification statute—to clarify their otherwise uncertain status at common law as persons entitled to reimbursement by their corporate employer when the employee is sued despite his acting in good faith and in a manner he believed to be in or not opposed to the best interests of the corporation. *See* Allen M. Terrell, Jr., *Indemnification of Employees*, 5 DEL. J.CORP.L. 251, 254–55 (1980) (describing employee indemnification right based on principles of agency and good faith performance of tasks for employer). The record shows Marvin H. Grove's testimony went directly to this matter, for the information he gave regarding the extensive testing of the valve clearly

**158**

manifests his good faith in carrying out his corporate functions.

Given what we find to be the policy and purpose of the Delaware statute—to have broad coverage and flexible application—we cannot accept appellee's all-or-nothing interpretation of the statute. Appellee's argument proposes a static view of the litigation process, locking in indemnification rights at one stage of the process, namely at the preliminary stage of the pleadings. The pleading must be a primary part of any follow-up indemnification suit because it informs a court not involved in the original lawsuit of the substance of the suit, but it cannot be the end-all.

Appellee argues that such a holding places an incredible burden on the parties, the courts, and corporate management because we now require an unnecessarily protracted review of the entire underlying lawsuit to determine indemnification rights. We find appellee greatly exaggerates the evidence necessary for a court to analyze why a particular party was sued. Indeed, in the instant case, to ascertain the connection between Marvin H. Grove's position as a party to the NOVA lawsuit and his corporate status, only the substance of the lawsuit need be known, via the complaint, plus some enlightening information regarding the nature of Marvin H. Grove's work and capacity within the corporation. As repeatedly noted, the instant case concerns the NOVA plaintiff's intent to assess liability on the entity responsible for what it believed to be negligent design or manufacture of the M–303 valve. Marvin H. Grove was sued because of *some role* NOVA believed he played in the design or manufacture of the valve. We find some indication showing that Marvin H. Grove was sued because of his role in designing the valve as an employee. Because a summary judgment proceeding requires us to resolve any doubts or inferences in favor of the non-movant, we find we must reverse the summary judgment for the material fact questions raised by appellant.

On remand, the parties may present evidence clarifying his work in this capacity and how this work coincided with the actual valve at issue. The parties will also need to appor-

tion in some reasonable manner the monies spent by Marvin H. Grove defending his status as general partner and as corporate personnel.

Accordingly, the judgment of the trial court is reversed and remanded for proceedings consistent with this opinion.