**AFFIRMED and Opinion Filed March 20, 2024**



In The
# Court of Appeals
## Fifth District of Texas at Dallas

### No. 05-23-00125-CV

**PAUL RUDNICKI, Appellant**
**V.**
**THOMPSON PETROLEUM CORPORATION, J. CLEO THOMPSON AND JAMES CLEO THOMPSON, JR., L.P., AND J. CLEO THOMPSON PETROLEUM MANAGEMENT, LLC, Appellees**

**On Appeal from the 298th Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DC-17-16848**

## MEMORANDUM OPINION

Before Justices Molberg, Reichek, and Smith
Opinion by Justice Smith

Appellant Paul Rudnicki appeals the trial court's summary judgment in favor of appellees Thompson Petroleum Corporation (TPC), J. Cleo Thompson and James Cleo Thompson, Jr., L.P. (the Partnership), and J. Cleo Thompson Petroleum Management, LLC (Petroleum Management) on Rudnicki's claim for indemnification. In one issue Rudnicki argues that the trial court erred in granting appellees' motion for summary judgment and denying his motion because he established as a matter of law that he was entitled to indemnification under the

Partnership's limited partnership agreement, TPC's articles of incorporation, and section 8.052 of the business organizations code. Because we conclude that the trial court did not err in granting summary judgment in favor of appellees, we affirm.

**Factual and Procedural Background**

Appellant Rudnicki is the former Chief Financial Officer and Vice President of TPC and Vice President – Finance of Petroleum Management. Appellees are family-owned entities formed by the J. Cleo Thompson, Jr. family. TPC oversaw and managed the other Thompson entities. Specifically, TPC provided employees to the Partnership. The Partnership owned, operated, and managed oil and natural gas interests in the Permian Basin. Petroleum Management was the General Partner of the Partnership and was responsible for managing its assets, including the employees provided by TPC. Thus, although they were separate entities, the day-to-day operations of the entities overlapped.

William J. Clarke, who was previously General Counsel, Vice-President, and Secretary of TPC, brought suit against appellees TPC and the Partnership for failing to pay him a $10 million bonus he alleged he was promised by TPC, specifically Rudnicki, for work that he did for the Partnership. Both Clarke's and Rudnicki's employment with appellees ended prior to the lawsuit. TPC and the Partnership subpoenaed Rudnicki to take a deposition as a non-party, and Rudnicki notified the companies of his right to indemnification and advancement of costs in having to defend and respond to the deposition notice. The companies did not respond. Clarke

–2–

later added Rudnicki as a defendant in the lawsuit.[1]  Rudnicki filed cross-claims against TPC and the Partnership and a third-party petition against Petroleum Management seeking indemnification and advancement of costs from appellees for his expenses, including attorney's fees, in defending against the suit.  TPC and the Partnership settled their suit with Clarke and Clarke filed a notice of nonsuit of his claims against TPC, the Partnership, and Rudnicki.[2]  The trial court granted the nonsuit and ordered dismissal of all claims, thereby rendering Rudnicki's indemnification claim as the only claim before the court.

Prior to the dismissal order, Rudnicki moved for partial summary judgment on his indemnification and advancement claim.  After the dismissal order, Rudnicki filed a second amended motion for partial summary judgment and appellees filed a cross-motion.  The parties filed responses and replies to the opposing party's motion, and the trial court held a hearing.  The trial court granted appellees' motion for summary judgment and denied Rudnicki's motion for partial summary judgment.  The trial court entered a final judgment ordering Rudnicki's claims dismissed with prejudice and that Rudnicki take nothing on his indemnification claim.  This appeal followed.

---

[1] Clarke also added TLT Petroleum II, LLC, a Thompson entity created to house and distribute bonuses or "profit interests" to members.  TLT is not a party to this appeal.

[2] TLT also settled with Clarke and was nonsuited.

**Summary Judgment Standard of Review**

We review a summary judgment de novo. *Trial v. Dragon*, 593 S.W.3d 313, 316 (Tex. 2019). A traditional motion for summary judgment requires the moving party to show that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c); *Lujan v. Navistar, Inc.*, 555 S.W.3d 79, 84 (Tex. 2018). If the movant carries this burden, the burden shifts to the nonmovant to raise a genuine issue of material fact. *Lujan*, 555 S.W.3d at 84. We take evidence favorable to the nonmovant as true, and we indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *Ortiz v. State Farm Lloyds*, 589 S.W.3d 127, 131 (Tex. 2019). However, when both parties move for summary judgment on the same issue and the trial court grants one motion and denies the other, as the court did here, we consider both parties' summary judgment evidence, determine the question presented, and render the judgment the trial court should have rendered if we determine it erred. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005).

**Parties' Competing Motions for Summary Judgment**

In his second amended motion for partial summary judgment, Rudnicki argued that he was entitled to judgment as a matter of law on his claim for indemnification against appellees. Specifically, Rudnicki contended that he was entitled to indemnification from the Partnership and from Petroleum Management under section 5.13 of the limited partnership agreement and from TPC under Article

Eleven of its Articles of Incorporation. Rudnicki included the limited partnership agreement and articles of incorporation as evidence in his motion for summary judgment.

The Agreement of Limited Partnership provides, in relevant part, as follows:

> *5.13 Indemnification of General Partner.* To the fullest extent permitted by law, and subject to the procedures in Article 11 of the Partnership Act, on request by the Person indemnified the Partnership shall indemnify each General Partner and its Affiliates and their respective officers, directors, partners, employees, and agents and hold them harmless from and against all losses, costs, liabilities, damages, and expenses (including, without limitation, fees and disbursements of counsel) any of them may incur as a General Partner in the Partnership or in performing the obligations of the General Partner with respect to the Partnership, **SPECIFICALLY INCLUDING THE INDEMNIFIED PERSON'S SOLE, PARTIAL, OR CONCURRENT NEGLIGENCE,** but excluding any such items incurred as a result of something for which the General Partner is liable under Section 5.8, and on request by the Person indemnified the Partnership shall advance expenses associated with the defense of any related action.

"General Partner" is defined as Petroleum Management or "any other Person admitted pursuant to this Agreement in the capacity of general partner in the Partnership."

Rudnicki asserted that he was one of the people to be indemnified under section 5.13, as he was Vice President – Finance of the General Partner, Petroleum Management, and Chief Financial Officer and Vice President of the General Partner's Affiliate, TPC. Rudnicki also asserted that he was acting on behalf of the General Partner, Petroleum Management, which managed the Partnership, with

regard to the allegations made by Clarke concerning his bonus compensation for work he did on behalf of the Partnership. Rudnicki emphasized that TPC conducted no business of its own except to supply employees to the Partnership and that appellees had consistently disregarded formal corporate distinctions between the entities.

Appellees asserted in their motion for summary judgment that Rudnicki's expenses did not fall within the parameters of the indemnification provision because "[h]is legal fees defending against [] Clarke's claims were neither incurred *as* a General Partner nor *in performing the obligations* of the General Partner." Instead, "they were incurred years after Rudnicki ceased working for" appellees and "could not have been incurred 'as a General Partner,' nor 'in performing any obligations of the General Partner.'" Appellees emphasized that section 5.13 did not contain broad indemnification language such as "arise out of" or "are related to" as was at issue in the cases relied on by Rudnicki.

Rudnicki responded that indemnity would be a hollow promise if it did not extend to former employees for actions arising during their employment, especially if an employer could simply terminate an employee to avoid its contractual obligation to indemnify. Rudnicki further argued that appellees misinterpreted "as" to require a "present tense timing of actions," when the proper interpretation is "actions taken as a General Partner, not the timing of a lawsuit brought pertaining to

–6–

such actions." Rudnicki asserted the same was true for actions taken in performing the obligations of the General Partner.

Rudnicki also argued he was entitled to indemnification from TPC under Article Eleven of the Articles of Incorporation, which provides, in relevant part, as follows:

> The corporation may indemnify any director, officer or employee, or former director, officer or employee of the corporation, or any person who may have served at its request as a director, officer or employee of another corporation in which it owns shares of stock, or of which it is a creditor, against expenses actually and necessarily incurred by him and any amount paid in satisfaction of judgments in connection with any action, suit or proceeding, whether civil or criminal in nature, and which he is made a party by reason of being or having been such a director, employee or officer (whether or not a director, employee, or officer at the time such costs or expenses are incurred by or imposed by him[)]. The corporation may also reimburse to any director, officer or employee the reasonable costs of settlement of any such action, suit or proceeding. Such rights of indemnification and reimbursement shall not be deemed exclusive of any other rights to which such director, officer or employee may be entitled by law or under any by-law, agreement, vote of shareholders, or otherwise.

Although Rudnicki acknowledged that the language under Article Eleven was permissive, he asserted that public policy, specifically the perceived benefit corporations obtain through indemnifying their officers and directors, favored the broad application of indemnification and reimbursement provisions so that indemnified persons received the broadest possible protection. Rudnicki also argued that the last sentence of Article Eleven—"Such rights of indemnification and reimbursement shall not be deemed exclusive of any other rights to which such

director, officer or employee may be entitled by law or under any by-law, agreement, vote of shareholders, or otherwise"—authorized his rights of indemnification and reimbursement through other avenues such as section 8.052 of the business organizations code, which provides as follows:

> On application of a governing person, former governing person, or delegate and after notice is provided as required by the court, a court may order an enterprise to indemnify the person to the extent the court determines that the person is fairly and reasonably entitled to indemnification in view of all the relevant circumstances.

TEX. BUS. ORGS. CODE ANN. § 8.052(a).

Appellees argued in their motion for summary judgment that these provisions are permissive, not mandatory, and thus Rudnicki had no contractual right to indemnification from TPC.

### Contract Construction

We review the construction of a contract, including whether it is ambiguous, de novo. *Kachina Pipeline Co. v. Lillis*, 471 S.W.3d 445, 449 (Tex. 2015). We must ascertain the true intentions of the parties as expressed in the agreement itself. *Italian Cowboy Partners, Ltd. v. Prudential Ins. Co. of Am*., 341 S.W.3d 323, 333 (Tex. 2011). Generally, "the instrument alone will be deemed to express the intention of the parties for it is objective, not subjective, intent that controls." *Matagorda Cnty. Hosp. Dist. v. Burwell*, 189 S.W.3d 738, 740 (Tex. 2006) (per curiam) (citation omitted). "We therefore 'presume parties intend what the words of their contract say' and interpret contract language according to its 'plain, ordinary,

and generally accepted meaning' unless the instrument directs otherwise." *URI, Inc. v. Kleberg Cnty.*, 543 S.W.3d 755, 764 (Tex. 2018) (first quoting *Gilbert Tex. Constr., L.P. v. Underwriters at Lloyd's London*, 327 S.W.3d 118, 126 (Tex. 2010); and then quoting *Heritage Res., Inc. v. NationsBank*, 939 S.W.2d 118, 121 (Tex. 1996)). Ambiguity does not exist simply because the parties disagree over a term's meaning and present different interpretations of the agreement. *Dynegy Midstream Servs., Ltd. P'ship v. Apache Corp.*, 294 S.W.3d 164, 168 (Tex. 2009); *DeWitt Cnty. Elec. Coop., Inc. v. Parks*, 1 S.W.3d 96, 100 (Tex. 1999).

### Construction of Indemnification Provisions

We first begin with Rudnicki's argument that he is entitled to indemnification under section 5.13 of the Partnership agreement. Rudnicki relies on several cases for the proposition that indemnification provisions should be applied broadly and that he is not excluded from indemnification simply because he was sued individually or no longer an officer or employee of the Thompson companies when he was brought into the lawsuit.

Three of the cases on which he relies examine indemnification provisions that contain "by reason of" language. In *United States v. Lowe*, the court rejected the corporation's argument that the former officer was per se precluded from being indemnified because he was sued individually when the bylaws provided that the corporation shall indemnify "[e]ach director and each officer or former director or officer of this corporation" for "liabilities imposed upon him and expenses

–9–

reasonably incurred by him in connection with any claim made against him . . . *by reason of his being or having been such director or officer . . . .*" 29 F.3d 1005, 1007 n.3, 1009–1010 (5th Cir. 1994) (emphasis added).  The court recognized "the breadth with which many courts have interpreted language such as 'by reason of'" and noted that the "factual inquiry should be on the 'connection between the complaint and [Lowe's] corporate status."  *Id.* at 1010–1011 (alteration in original; citation omitted).  In *Homestore, Inc. v. Tafeen*, the Supreme Court of Delaware[3] explained that the test for determining whether a corporate official was sued "by reason of the fact" of their corporate position is whether "there is a nexus or causal connection between any of the underlying proceedings . . . and one's official corporate capacity."  888 A.2d 204, 214 (Del. 2005).  But the language in the corporation's bylaws, which was also language contained in the Delaware General Corporation Law, provided: "Each person who was or is . . . involved in any action, suit or proceeding, . . . *by reason of the fact* that such person . . . is or was a director or officer of the Corporation . . . shall be indemnified . . . ."  *Id.* at 211, 213 (emphasis in original).  And, in *In re DeMattia*, an opinion out of this Court, the indemnification provision contained similar language: "the Company shall indemnify each Member who was, is, or is threatened to be made a party to any . . . suit . . . *by reason of the fact that he or she is or was a Member*."  644 S.W.3d at 230 (emphasis in original).

---

[3] "[C]ourts throughout the United States, including Texas, look to Delaware on matters of corporate law."  *In re DeMattia*, 644 S.W.3d 225, 230 (Tex. App.—Dallas 2022, orig. proceeding).

–10–

But the question at issue in *DeMattia* was whether the advancement provision linked back to the indemnification provision so that advancement was required for both current and former members; there was no question that indemnification was required for both current and former members because the language expressly stated "*is* or *was* a Member." *Id.* at 228–29, 232–33 (emphasis added).

Rudnicki also relies on *RSR Corp. v. Siegmund*, in which this Court noted that the phrase "any action or proceeding *arising out of or relating to* this Agreement" (in a consent to jurisdiction clause) was "broad and encompass[ed] all claims that have some possible relationship with the agreement, including those claims that may only 'relate to' the agreement." 309 S.W.3d 686, 701 (Tex. App.—Dallas 2010, no pet.) (emphasis added).

Relying on the broad language in these cases, Rudnicki asserts that Clarke's dispute over his bonus, which was allegedly promised to him by Rudnicki, as an authorized agent and corporate officer of TPC and the Partnership, has more than "some possible relationship" and "nexus or causal connection" to Rudnicki "performing the obligations of the General Partner with respect to the Partnership." But regardless of whether the evidence supports Rudnicki's argument that he was performing the obligations of General Partner at the time he allegedly authorized

Clarke's bonus,[4] the question we must answer is whether section 5.13 provides for broad indemnification like the cases on which Rudnicki relies.

Our disposition turns on the following language in section 5.13: "all losses, costs, liabilities, damages, and expenses . . . any of them may *incur as a General Partner* in the Partnership or *in performing the obligations of the General Partner* with respect to the Partnership" (emphasis added). Specifically, our focus is on the words "incur as" and "incur . . . in." As set out above, the cases Rudnicki cites to for support do not address this language. Nor does section 5.13 contain broad language such as "by reason of," "arising out of," or "relating to," like the cases above.

Appellees assert on appeal that the "[Partnership's] Agreement *could* have provided for indemnification of expenses incurred 'based on,' 'arising from,' or similarly 'related to' a covered person's performance of the obligations of the GP with respect to [the Partnership]. But that simply is not what it says." We agree. We "are obliged to enforce the parties' bargain according to its terms and may not rewrite a contract under the guise of interpretation." *In re DeMattia*, 644 S.W.3d at 234. Although indemnification provisions may generally be drafted broadly as in the examples above, this one was not.

---

[4] The parties dispute whether Rudnicki was authorized to promise Clarke a bonus and whether, even if he was authorized, such would have been an obligation of the General Partner of the Partnership versus an obligation of TPC.

–12–

The parties have not directed us to any case, and we have not found one, in which a court has construed the phrase at issue here. In his reply brief, Rudnicki sets out several meanings of "incur" and urges us to adopt the second definition in the American Heritage Dictionary—"to become subject to as a result of one's actions." *See Incur*, THE AMERICAN HERITAGE DICTIONARY (5th ed. 2022) (defining "incur" as "[t]o acquire or come into (something usually undesirable); sustain" or "[t]o become liable or subject to as a result of one's action; bring upon oneself"); *see also Aviles v. Aguirre*, 292 S.W.3d 648, 649 n.2 (Tex. 2009) (per curiam) (setting out definitions of "incur," including as "[t]o become liable or subject to" and "[t]o suffer or bring on oneself (a liability or expense)" (first quoting BLACK'S LAW DICTIONARY 768 (6th ed. 1990); and then quoting BLACK'S LAW DICTIONARY 782 (8th ed. 2004))); *Vill. Place, Ltd. v. VP Shopping, LLC*, 404 S.W.3d 115, 127 (Tex. App.—Houston [1st Dist.] 2013, no pet.) (setting out multiple meanings of incur: "brought on," "occasioned," "caused," and "to become liable to pay"). He did not present this specific definition or argument to the trial court in his motion for summary judgment. However, he maintains that to construe "incur" as appellees suggest "would completely nullify the purpose of agreeing to indemnify Rudnicki 'to the fullest extent permitted by law' as it is difficult to imagine a scenario when a General Partner or affiliate would ever incur attorneys' fees while simultaneously . . . performing duties as a General Partner."

But the meaning of the word "incur" by itself is not what is at issue here; the meaning of "incur as" or "incur in performing" is. Rudnicki's attempt to substitute the American Heritage Dictionary's definition in the place of "incur," which includes the additional words "as a result of one's actions," broadens the provision in the partnership agreement because it essentially adds in the words that are missing, like "relates to," "arises out of," or "by reason of." We decline Rudnicki's invitation to add words to the agreement under the guise of applying a dictionary definition to construe the phrase's common meaning.

Rudnicki's affidavit testimony provided, "From the time I received the Discovery Subpoena commanding my deposition from TPC and the J. Cleo Partnership, I have incurred and continue to incur expenses in defense of this action, which include reasonable and necessary attorney's fees and costs." Rudnicki did not incur the litigation expenses "as" a General Partner or "in performing" its duties. By the time he began participating and defending himself in the suit, he was no longer employed by the Thompson entities and, thus, was no longer performing the obligations of Petroleum Management. Had the language in section 5.13 provided for broad indemnification such as for expenses incurred by reason of performing the obligations of the General Partner, or for expenses incurred arising out of the person's role as director or officer of the General Partner, or for expenses based on the person's performance of the obligations of the General Partner, our analysis might be different. But that is not the language before us, and we cannot write in

that language in construing the word "incur." To do so, would expand the partnership agreement's limited indemnification provision to one that is much broader. Therefore, we conclude that Rudnicki was not entitled to indemnification under section 5.13.

We next turn to the articles of incorporation. Although Article Eleven contains broad indemnification language—"by reason of being or having been such a director, employee or officer (whether or not a director, employee, or officer at the time such costs or expenses are incurred by or imposed by him[)]"—Article Eleven also expressly provides, "The corporation *may* indemnify any director, officer or employee, or former director, officer or employee of the corporation . . . against expenses actually and necessarily incurred by him and any amount paid in satisfaction of judgments . . . ." The word "may" in this context is permissive, not mandatory. *See Thiagarajan v. Tadepalli*, 430 S.W.3d 589, 596–97 (Tex. App.—Houston [14th Dist.] 2014, pet. denied) (noting similar phrase in articles of incorporation was permissive, not mandatory); *see also* TEX. BUS. ORGS. CODE § 8.0003 ("A governing document of an enterprise may restrict the circumstances under which the enterprise must or may indemnify or may advance expenses to a person under this chapter."). Thus, TPC was permitted under its articles of incorporation to indemnify Rudnicki, but it was not required to.

For the same reason, we reject Rudnicki's argument that section 8.052 of the business organizations code entitled him to indemnification, as it also contains

–15–

permissive language.  *See* TEX. BUS. ORGS. CODE § 8.052(a) ("a court *may* order an enterprise to indemnify the person to the extent the court determines that the person is fairly and reasonably entitled to indemnification in view of all the relevant circumstances" (emphasis added)); *see also* TEX. GOV'T. CODE ANN. § 311.016 (Code Construction Act provides that "'[m]ay' creates discretionary authority or grants permission or a power," whereas "'[s]hall' imposes a duty").  Rudnicki did not plead or argue that he was entitled to indemnification under the code's mandatory indemnification provision.  *See id.* § 8.051(a).

In reaching this conclusion, we acknowledge the cases interpreting "may" as mandatory in certain contexts.  For example, when the language provides that a party "may recover" attorney's fees, "may" is not discretionary, just as when the language provides the party "shall be awarded" or "is entitled to" fees.  *Bocquet v. Herring*, 972 S.W.2d 19, 20 (Tex. 1998).  However, the difference in the context of this and similar language is that the language relates back to the party seeking or requesting the benefit or right ("the party may recover"), not the party from whom the benefit or right is being sought, such as the corporation or trial court here ("the corporation may indemnify" or "the court may order").  Here, "may" is used as permissive, or discretionary language.  *See id.*

We are also mindful of Rudnicki's position that the broad policy goal of indemnification is to protect officers and directors from litigation expenses resulting from their duties as officer or directors.  *See In re DeMattia*, 644 S.W.3d at 230

–16–

("Indemnification encourages corporate service by protecting an official's personal financial resources from depletion by the expenses incurred during litigation that results from the official's service."). However, we are required to construe and enforce the language before us, not interpret the provision by rewriting it to fit public policy. *Id.* at 234.

We conclude that Rudnicki is not entitled to indemnification under section 5.13 of the partnership agreement, Article Eleven of the articles of incorporation, or section 8.052 of the business organizations code. Therefore, the trial court did not err in granting appellees' motion for summary judgment and denying Rudnicki's motion for partial summary judgment.

## Conclusion

We affirm the judgment of the trial court.

/Craig Smith/
CRAIG SMITH
230125F.P05 JUSTICE



## Court of Appeals
## Fifth District of Texas at Dallas

## JUDGMENT

PAUL RUDNICKI, Appellant

No. 05-23-00125-CV      V.

THOMPSON PETROLEUM
CORPORATION, J. CLEO
THOMPSON AND JAMES CLEO
THOMPSON, JR., L.P., AND J.
CLEO THOMPSON PETROLEUM
MANAGEMENT, LLC., Appellees

On Appeal from the 298th Judicial
District Court, Dallas County, Texas
Trial Court Cause No. DC-17-16848.
Opinion delivered by Justice Smith.
Justices Molberg and Reichek
participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

It is **ORDERED** that appellees THOMPSON PETROLEUM CORPORATION, J. CLEO THOMPSON AND JAMES CLEO THOMPSON, JR., L.P., and J. CLEO THOMPSON PETROLEUM MANAGEMENT, LLC recover their costs of this appeal from appellant PAUL RUDNICKI.

Judgment entered this 20th day of March 2024.